**STATE of Missouri, Respondent,**

v.

**James WILSON, Appellant.**

**No. SC 88899.**

Supreme Court of Missouri,
En Banc.

June 24, 2008.

S. Kristina Starke, Office of the Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jaime Wilson Corman, Asst. Atty. Gen., Jefferson City, for respondent.

LAURA DENVIR STITH, Chief Justice.

James Wilson was convicted of statutory rape, statutory sodomy, and reckless exposure of a 15–year–old girl to HIV. On appeal, he argues that the trial court erred in failing to allow him to impeach the victim with deposition testimony discussing a specific prior instance in which the victim lied about whether she had been the cause of an accident involving her mother's car. He also argues that the victim's testimony as to the dates of the offenses and as to the specific conduct that underlay the sodomy offense was too vague to support his convictions on those offenses.

This Court affirms. The limited exception to the general rule of inadmissibility of extrinsic evidence of specific prior acts of misconduct by the victim set out in *State v. Long*, 140 S.W.3d 27 (Mo. banc 2004), does not apply every time the credibility of the victim is a central issue and it is alleged that the victim knowingly lied on a prior occasion. While the prior false allegation need not be identical to the present allegation of the witness sought to be impeached, the *Long* exception applies only when the impeaching incident involves a prior false allegation to persons in authority implicating a specific person and involving the same or substantially similar circumstances as the present allegation.

Here, the victim's prior statement to her family that "somebody else" must have caused the damage to her mother's car that actually occurred when she borrowed

the car, even though she had no driver's license, does not constitute a specific prior false allegation to a person in authority. Moreover, the conduct involved—damaging a car—is not an allegation that reflects circumstances that are sufficiently similar in kind to the present allegation—sexual assault. The trial court did not err in excluding the evidence. The Court also rejects Mr. Wilson's challenge to the sufficiency of the evidence on all challenged counts.

## I. FACTUAL AND PROCEDURAL BACKGROUND

James Wilson lived with his girlfriend and her four daughters. In January 2003, he had sexual intercourse with D.B., his girlfriend's daughter, who was then 15 years old. Mr. Wilson engaged in additional sexual contact with D.B. during 2003, contact that included intercourse, digital penetration, and oral sex. The last of these incidents occurred in November 2003, when D.B. was still under age 17.[1]

In the summer of 2004, D.B.'s mother became very sick and was hospitalized. On September 27, 2004, D.B. found a medical record indicating that Mr. Wilson was HIV-positive. The next day, D.B. went with her aunt to visit her mother in the hospital, and she learned that her mother was also HIV-positive. D.B. started crying and told her aunt that Mr. Wilson had been having sex with her. D.B.'s aunt called the police, who went to see Mr. Wilson. Mr. Wilson fled out the back door to avoid the officer. The officer located Mr. Wilson and said he wanted to talk about a telephone call concerning a disturbance. Before the officer could mention D.B.'s name or allegations, Mr. Wilson de-

clared that D.B. was lying and that he never touched her. Mr. Wilson was then placed under arrest.

On October 19, 2004, Mr. Wilson was charged by a grand jury with eight counts of second-degree statutory rape, three counts of statutory sodomy, and one count of recklessly exposing another to HIV. He entered a plea of not guilty and the case proceeded to a jury trial. At trial, Mr. Wilson sought to cross-examine D.B. and introduce prior deposition testimony from D.B. concerning her admission that she had lied about her role in a car accident in July 2004. The trial court excluded this evidence and prohibited the cross-examination as irrelevant.

After the close of the evidence, the trial court granted Mr. Wilson's motion for a directed verdict on one of the statutory rape charges,[2] but submitted the remaining seven counts of statutory rape as well as the statutory sodomy and HIV exposure charges. The jury convicted Mr. Wilson on all counts that were submitted. He was sentenced, as a prior offender, to fifteen years on the first statutory rape count, and seven years on each remaining count of rape, sexual assault, and exposure to HIV. The seven-year sentences were ordered to be served concurrently with each other but consecutively to the fifteen-year sentence. Mr. Wilson appealed to the court of appeals, which transferred the case to this Court for clarification of *Long's* application.

## II. THE COURT DID NOT ABUSE ITS DISCRETION IN EXCLUDING EVIDENCE OF A PRIOR UNRELATED LIE BY THE VICTIM

During defense counsel's pre-trial deposition of D.B., she describes how she

---

1. The Court will address these events in greater detail in its discussion of the sufficiency of the evidence.

2. That charge alleged that Mr. Wilson had sexual intercourse with D.B. in December 2003, but the victim testified that their final sexual encounter was in November 2003.

borrowed her mother's car in July 2004 without permission and then lied about it to her family after she caused an accident with the car:

I was just driving and I went around the corner and I wrecked the car on McRee. I ran into a hardware store. I got out and looked at it. I was like, oh, my God. I wrecked this car, the truck. I went home and put the car back. I parked the car out back or whatever and went up the stairs. I told my grandma, I said, "Grandma, somebody ran into the car or whatever." And she was like, "What?" And then I was like, "Yeah. Somebody wrecked the car or whatever." But I lied and said that someone did when all along I did it. I had stole the keys and went off with the car or whatever.

Mr. Wilson did not believe her story about the accident. He accused her of being the one who had wrecked the car, until she finally admitted that he was right. As she described it, he said, "You did it. You did it. Da, da, da, da, da, da ... [he's] smart talking to me. Loud talking to me and all that, whatever. [We] went down to the police station on Jefferson and I had told them [I wrecked the car], and basically that's it." D.B. agreed in the deposition that some unspecified charges were pending against her in St. Louis City relating to the car accident.

The state filed a motion in limine to prevent defense counsel from inquiring into specific acts of misconduct, which the court granted. Prior to Mr. Wilson's cross-examination of D.B. at trial, defense counsel asked the trial court whether he could inquire about D.B. lying and the car accident during his cross-examination. The trial court did not allow the inquiry during cross-examination. When the cross-examination was complete, defense counsel asked the court to reconsider its ruling, arguing that evidence of D.B.'s lie about the circumstances of the 2004 car accident was admissible "to show that specific incident of lying to impeach her credibility" and made an offer of proof using her deposition testimony. The trial court again ruled that this evidence was irrelevant and improper impeachment. The Court notes that this procedure—an attempt to cross-examine followed by an offer of proof—is what the rules of evidence require when attempting to impeach a witness through specific acts of lying or misconduct. *See Strahl v. Turner*, 310 S.W.2d 833, 844 (Mo.1958) (noting that to impeach a witness by acts of misconduct it is necessary "to lay the proper foundation by asking him on his cross-examination" about the misconduct). If an attempt to cross-examine is not made, or is not clearly shown to be futile, then the issue will not be preserved for appeal.

 Mr. Wilson now argues that the trial court's ruling was an abuse of discretion. He acknowledges that as a general rule impeachment evidence "should be confined to the real and ultimate object of the inquiry, which is the reputation of the witness for truth and veracity," *State v. Wolfe*, 13 S.W.3d 248, 258 (Mo. banc 2000), and that trial courts "retain broad discretion over issues of relevancy and admissibility of evidence, and we will not interfere with those decisions unless there is a clear showing of abuse of discretion." *State v. Hutchison*, 957 S.W.2d 757, 763 (Mo. banc 1997).

But, Mr. Wilson notes, a party is permitted to cross-examine a witness regarding specific acts of misconduct as it relates to credibility. *Rousan v. State*, 48 S.W.3d 576, 590 (Mo. banc 2001). Furthermore, in *Long*, 140 S.W.3d at 31, this Court held that where the credibility of the victim is a central issue in the determination of guilt or innocence, "a criminal defendant in Mis-

souri may, in some cases, introduce extrinsic evidence of prior false allegations" by the victim. *Id.* He argues that this is such a circumstance, because the credibility of D.B. was a central issue in the case and she admitted she had lied to her family about the accident just a short time before she told the police about his rape and sodomy of her.

This Court disagrees. Contrary to Mr. Wilson's contentions, the statements D.B. made to her family do not amount to prior false allegations as contemplated in *Long*. In *Long*, which was a sexual assault case, the trial court excluded defendant's evidence that the victim had made three prior false allegations to the police that specific individuals had physically or sexually assaulted her. *Id.* at 29–30. These types of prior false allegations, which implicate a specific individual in similar conduct and were made to investigating authorities, were found in *Long* to be sufficiently probative of the victim's veracity that their value in weighing the victim's credibility in making her current allegations outweighed the prejudice allegedly resulting from their admission. *Id.*

Here, unlike in *Long*, the witness did not accuse anyone other than an unnamed "somebody" of causing the car accident, and D.B. did not make a false report about the accident to any formal authority. Moreover, the subject matter of the prior allegation was dramatically different than the charged offense. Although it is not required that the false allegations be the same as the charged offense, in order to be admissible for impeachment purposes, the prior false allegations must involve the

same or substantially similar circumstances as the allegations made by the victim in the current case. *See id.* at 31 ("similarities between the prior false allegation and the charged offense as well as circumstances under which the allegation was made all factor into the relevance analysis").

The relevance of this incident to D.B.'s reputation for truth and veracity was scant, and the trial court acted within its discretion in excluding this evidence. *See State v. Oates*, 12 S.W.3d 307, 313 (Mo. banc 2000) ("The trial court must be permitted broad discretion in deciding the permissible scope of cross-examination").[3]

## III. SUFFICIENCY OF THE EVIDENCE

 Mr. Wilson also challenges the sufficiency of the evidence presented to convict him on certain of the counts submitted. Appellate review of a sufficiency of the evidence claim "is limited to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt," *State v. Crawford*, 68 S.W.3d 406, 408 (Mo. banc 2002). This Court views the evidence and makes all reasonable inferences therefrom in the light most favorable to the verdict. *State v. Langdon*, 110 S.W.3d 807, 811 (Mo. banc 2003).

### A. Evidence was Sufficient for Statutory Rape and Sodomy Convictions

 Mr. Wilson was charged with eight counts of statutory rape, seven of which

---

**3.** Mr. Wilson also argues that the evidence should have been admitted to show that the victim was mad at him for revealing her lie. At trial, Mr. Wilson did not argue the evidence should be admitted to show bias, however, but rather argued that it should be admitted as a specific incident of lying that

makes the witness less credible. Mr. Wilson's argument regarding bias is not preserved for appeal, *State v. Johnson*, 207 S.W.3d 24, 43 (Mo. banc 2006) ("an appellant cannot broaden the scope of his objections on appeal beyond that made in the trial court"), and it does not amount to plain error.

were submitted to the jury, and three counts of statutory sodomy, all of which were submitted to the jury. Mr. Wilson argues that the evidence that he committed the act of statutory sodomy and the act of statutory rape alleged to have occurred between January 1 and May 16, 2003, was too vague and indefinite to support a jury finding of guilt beyond a reasonable doubt on these counts.

Second-degree statutory sodomy is defined as a person twenty-one years of age or older having "deviate sexual intercourse with another person who is less than seventeen years old." Sec. 566.064, RSMo 2000. Deviate sexual intercourse is defined as "any act involving the genitals of one person and the hand, mouth, tongue or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person." Sec. 566.010(1). Statutory rape is defined as when a person "twenty-one years of age or older ... has sexual intercourse with another person who is less than seventeen years of age." Sec. 566.034.

▉ At trial, the victim testified that, in January 2003, Mr. Wilson "stuck his fingers in me and then had sexual intercourse with me." Mr. Wilson argues that this testimony was insufficient to establish that his fingers penetrated the victim's vagina. Although the victim did not specify precisely where Mr. Wilson stuck his fingers, the context supported a reasonable inference that she meant that he put in fingers in her vagina. *See State v. Cooper*, 271 S.W. 471, 474 (Mo.1925) (deviate sexual assault case involving digital penetration).

This is sufficient to support the challenged statutory sodomy conviction. Similarly, D.B. testified that Mr. Wilson had intercourse with her twice between January 1, 2003, and May 16, 2003; the first time was in January 2003, and the next time was "before [her] birthday" on May 16, 2003. This evidence is sufficient to support the jury's verdict against Mr. Wilson on both charges of statutory rape alleged to have occurred between January 1, 2003 and May 16, 2003.[4]

Mr. Wilson also argues that the evidence at trial was insufficient to support submission of the two counts alleging that he had sex with D.B. in September 2003 and in November 2003. It is uncontested that D.B. was under 17 during these time periods and that she testified unequivocally that Mr. Wilson had sexual intercourse with her eight times between January and November 2003. Mr. Wilson's real complaint is that the evidence was insufficient for the jury to conclude that the statutory rapes occurred during the charged time frames.

Again, this Court disagrees. D.B. testified that there was "a time in September" and "a time in November" when Mr. Wilson had sexual intercourse with her and explained that she recalled that the events occurred during those time periods because of other events that occurred near those times. While the victim did not give specific dates, Mr. Wilson cites no authority that she was required to do so, and the case law would not support such an argument. The evidence was sufficient to support his convictions.

**B. Evidence was Sufficient for Reckless Exposure to HIV Conviction**

4. Mr. Wilson only challenges the sufficiency of the evidence as to one of the two statutory rape charges in the January 2003 through May 16, 2003, time frame, but in order to ascertain whether the evidence was sufficient for one of the charges, the Court notes the evidence supporting both.

█ Finally, Mr. Wilson argues that the evidence was insufficient to support his conviction for reckless exposure of the victim to HIV. Section 191.677 makes it unlawful for any individual knowingly infected with HIV to recklessly expose another person to the virus through sexual intercourse without his or her knowledge and consent. Sec. 191.677.1(2)(a). Mr. Wilson's argument that the jury could not find that he was recklessly exposing D.B. to HIV because it is conceded that he withdrew prior to ejaculation fails under the plain terms of the statute. The statute states in pertinent part:

> Evidence that a person has acted recklessly in creating a risk of infecting another individual with HIV shall include, but is not limited to, the following:
>
> a. The HIV-infected person knew of such infection before engaging in sexual activity with another person, ... or purposely causing his or her semen, vaginal secretions, or blood to come into contact with the mucous membranes or nonintact skin of another person, and such other person is unaware of the HIV-infected person's condition or does not consent to contact with blood, semen or vaginal fluid in the course of such activities.

Sec. 191.677.1.

To prove recklessness under this statute, then, the state was required to prove two essential elements: (1) Mr. Wilson knew of his infection before he had sexual activity with D.B.; and (2) D.B. was unaware that Mr. Wilson was HIV positive. Contrary to Mr. Wilson's contentions, the state does *not* have to prove that he purposely caused his semen to come into contact with D.B. The statute is unambiguous that one who knows he is HIV positive is reckless if he has sexual intercourse with another without making that other person aware of his HIV positive status.

The state adduced evidence that Mr. Wilson knowingly had sexual contact with the victim without using a condom. It also established that HIV can be transmitted by sexual fluids even if the actor withdraws prior to ejaculation. The evidence further showed that Mr. Wilson knew that he was HIV-positive in 1998, some five years before he engaged in sexual activity with D.B. D.B. testified that she learned Mr. Wilson was HIV positive in 2004, several months after he last had sexual contact with her. While the evidence regarding withdrawal would have been relevant to the jury's determination of recklessness, the statute does not contemplate that withdrawal is in itself a complete defense. The evidence presented was sufficient to support his conviction under section 191.677.

## IV. CONCLUSION

For the reasons set forth above, this Court affirms the judgment of the trial court.

All concur.