**STATE of Missouri, Respondent,**

v.

**Philip Ray COUCH, Appellant.**

No. SC 88922.

Supreme Court of Missouri,
En Banc.

June 24, 2008.

J. Kevin Hamlett, Hagan, Hamlett & Maxwell, LLC, Mexico, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Linda Lemke, Asst. Atty. Gen., Jefferson City, for respondent.

LAURA DENVIR STITH, Chief Justice.

Philip Ray Couch was convicted of child molestation and two counts of endangering the welfare of a minor. On appeal, he argues that he offered extrinsic evidence that one of his three victims had made a prior false allegation of sexual abuse and a prior false allegation of physical abuse against other persons and that the trial court erred in precluding him from questioning her about these specific alleged prior instances of misconduct. He also argues that the trial court erroneously permitted the state's expert to vouch for the credibility of certain of the victims.

The trial court did not abuse its discretion in excluding the proffered extrinsic evidence of prior false allegations. With respect to the prior allegation of sexual abuse, the defendant did not show that the allegation was false, that the victim knew it was false, or that the allegation was made to a person in authority, all of which are threshold requirements for admissibility of extrinsic evidence of prior false allegations to impeach a witness' credibility under this Court's holdings in *State v. Wilson,* No. SC88899, 256 S.W.3d 58 (also decided today), and *State v. Long,* 140 S.W.3d 27 (Mo. banc 2004). Mr. Couch did offer evidence that the victim made a prior false allegation of physical abuse to authorities some five years previously, but the trial court acted within its broad discretion when it chose to exclude this evidence in light of its remoteness in time and the fact that it involved a different type of abuse and a different motivation.

The Court similarly concludes that the trial court did not abuse its discretion with respect to admission of the expert's testimony, which was offered in response to testimony elicited by defense counsel on cross-examination. The judgment is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Philip Ray Couch lived outside of Laddonnia with his wife and eleven children, some of whom were adopted. Three of these children are the alleged victims of sexual abuse in this case: V.C., born July 28, 1989, and later adopted; S.C., born March 9, 1991, and also later adopted; and J.C., born September 12, 1992, Couch's biological daughter.

According to the testimony presented at trial, on May 5, 2005, J.C., then age 12, entered her parents' bedroom because she

had trouble sleeping. Mr. Couch woke up and urged J.C. to get into his side of the bed. He then touched her breasts and vagina beneath her underclothes. J.C. attempted to get out of bed, but Mr. Couch pulled her back and touched her in the same way. When J.C. left the room, she went to her sister S.C.'s bedroom. S.C was 14. J.C. told S.C. about the incident, and she fell asleep in S.C.'s bedroom.

When J.C. woke up, S.C. and V.C. were in the bedroom. V.C. was then 15 years old. The three of them talked about the incident. S.C. and V.C. told J.C. they had experienced similar incidents with Mr. Couch over the preceding months and years. Specifically, in March 2005, Mr. Couch spread V.C.'s legs open and told her that she was helpless to stop him if he wanted to do something. In April 2005, while V.C. was sleeping on the couch, Mr. Couch rubbed V.C.'s genital area through her pajamas until she awoke and told him to stop.[1]

While the three of them were talking, their adopted brother R.C. entered the bedroom. R.C. was about 18 years old at this time. The girls told R.C. what had happened. R.C. left the house and reported the abuse to the Department of Family Services (DFS). His report prompted Officer John Pehle to speak with J.C. about the abuse. After the abuse was reported, Mr. Couch moved out of the house. The trial court entered an order of protection on May 7, 2005, prohibiting him from having any contact with S.C., V.C., or J.C. Subsequently, Lisa Clervi, a child psychologist, provided counseling to J.C., S.C.,

and V.C. Based on the experiences of the daughters, Mr. Couch was charged with child molestation, statutory sodomy, endangering the welfare of a child (two counts), victim tampering, and violating a child protection order.

Prior to trial, Mr. Couch filed a motion seeking permission to introduce extrinsic evidence that one of the three victims, V.C., had made prior false allegations of abuse. Specifically, Mr. Couch sought to prove that V.C. falsely accused Rocky Zumwalt, her previous stepfather, of physically abusing her, and Randy Zumwalt, Rocky's brother, of sexually abusing her.[2] After hearing testimony from certain witnesses as part of an offer of proof *immediately* prior to trial,[3] the trial court expressly ordered that the defendant could not cross-examine the victim or introduce extrinsic evidence on this issue at trial.

On September 12 and 13, 2006, a jury trial was held in Audrain County. In addition to Mr. Couch's children, the state also called several other witnesses, including Ms. Clervi. The defense adduced testimony from Mr. Couch and three other witnesses. The jury convicted Mr. Couch of molesting J.C. and endangering the welfare of V.C., but it acquitted him on the remaining counts. Following appeal to the Court of Appeals, Western District, this Court granted transfer. Mo. Const. art. V, sec. 10.

## II. NO ABUSE OF DISCRETION IN EXCLUDING PRIOR FALSE ALLEGATIONS

Mr. Couch contends that the trial court abused its discretion in precluding him

---

1. These are not the only incidents that the girls discussed. They are, however, the only incidents for which Mr. Couch was convicted, so the other allegations are not further discussed.

2. These alleged prior incidents are discussed further below.

3. The trial court concluded its order foreclosing this evidence on the same page of the transcript that the jury was brought in for its opening instructions and argument.

from presenting evidence that V.C. had made prior false allegations of physical abuse against her former stepfather, Rocky Zumwalt, and of sexual abuse against her stepfather's brother, Randy Zumwalt.

■ As a general rule, impeachment evidence "should be confined to the real and ultimate object of the inquiry, which is the reputation of the witness for truth and veracity," *State v. Wolfe*, 13 S.W.3d 248, 258 (Mo. banc 2000). But, if certain prerequisites are met, a party may be permitted to cross-examine a witness regarding specific acts of misconduct that relate to the witness' credibility. *Rousan v. State*, 48 S.W.3d 576, 590 (Mo. banc 2001). *Long* clarified that where the credibility of the victim is a central issue in the determination of guilt or innocence, "a criminal defendant in Missouri may, in some cases, introduce extrinsic evidence of prior false allegations" by the victim. 140 S.W.3d at 31. But, as this Court holds in *State v. Wilson* (also handed down this day) prior false allegations are admissible under *Long* only if they have been made to law enforcement or other authorities, are false, and concern a matter that is the same or substantially similar to the allegation in the instant case. *Wilson*, 256 S.W.3d at 59.

■ In accordance with the general rule regarding impeachment with extrinsic evidence, the party seeking to introduce extrinsic evidence must first attempt to cross-examine the witness about the subject of the alleged impeachment before the party will be permitted to introduce such extrinsic evidence. *Wilson*, 256 S.W.3d at 61. In applying these rules, trial courts "retain broad discretion over issues of relevancy and admissibility of evidence, and we will not interfere with those decisions unless there is a clear showing of abuse of discretion." *State v. Hutchison*, 957 S.W.2d 757, 763 (Mo. banc 1997). Mr. Couch contends he has made a clear showing of such an abuse of discretion here. This Court disagrees.

In this case, the state filed a motion in limine prior to trial in which it argued that the evidence regarding V.C.'s prior allegations should be excluded. The court permitted counsel for Mr. Couch to make an offer of proof. He presented the testimony of two witnesses: Randy Zumwalt, the brother of V.C.'s prior stepfather, and R.C., V.C.'s adopted brother.

Mr. Zumwalt testified that six or seven years earlier, V.C. accused him of sexually abusing her. The precise details of the allegations are unclear from his testimony, as he says at one point that she accused him of "raping her" and at another point that the allegation only involved "touching her vagina." At no point did investigating authorities speak to Mr. Zumwalt regarding these allegations, and the record does not show to whom the allegations were made.

Mr. Couch also offered the testimony of R.C. that V.C. told various state authorities (including social workers, case workers, and others in DFS) that their stepfather from a previous relationship physically abused her. According to R.C., V.C. wanted to be with her grandmother, so she alleged falsely that their stepfather beat her with a switch. DFS conducted an investigation based on this allegation and removed V.C. from her stepfather's custody and care. R.C. testified that V.C. later told him that this allegation was a lie. The trial court ruled that this testimony was not admissible at trial, and it would not permit cross-examination of the victim on these subjects.

## A. Preservation of Error

■ During V.C.'s cross-examination, Mr. Couch's counsel did not ask the court

to reconsider its ruling that he could not cross-examine her about her prior allegations of sexual and physical abuse. Normally, this would mean that the matter was not preserved. *State v. Copeland,* 928 S.W.2d 828, 848 (Mo. banc 1996) ("Motions in limine preserve nothing for review unless objections are made at the appropriate time during the case."). But, in this instance, at the time it granted the motion in limine, the trial court expressly directed counsel not to raise the issue again at trial, stating that it was "not going to allow the testimony or cross-examination of the victim as to any purported alleged false accusations in years past." The trial court continued: "I don't see any reason to have that same testimony just repeated almost verbatim again ... I will consider the testimony we've heard from Randy Zumwalt and R.C. on your motion also to be an offer of proof at trial ... without having to repeat the same testimony."

The trial court should not have directed counsel not to raise the issue again at trial. There is a very real purpose to requiring counsel to request permission at trial to offer testimony that has been ordered excluded in response to a pretrial motion in limine: when considered in context, the trial court may change its mind and find the evidence should be admitted. Until it hears the other evidence at trial, it cannot prejudge such a situation. This does not mean that it must require all the witnesses to testify as part of another offer of proof, but it is better practice, at a minimum, to permit counsel to ask the court at the appropriate point if it will reconsider its ruling based on the evidence presented in the motion in limine hearing.[4] Because the trial court here explicitly ordered counsel not to raise the issue at trial, however, this Court will examine the allegation of error as if counsel had properly sought to elicit testimony on these subjects on cross-examination and then made an offer of proof at trial.

### B. Trial Court Acted Within it Discretion to Exclude this Evidence

■ The trial court acted within its broad discretion when it excluded the evidence of V.C.'s alleged prior false allegations. While both the allegations concerning Randy Zumwalt and the current allegations concern sexual assault, no evidence was offered that law enforcement or other authorities were informed of the earlier allegations. To the contrary, Mr. Zumwalt testified that law enforcement authorities never questioned him and that he was never charged. Further, while Mr. Zumwalt denied the truth of the prior allegations, the fact that the party implicated by the allegations denies their truth does not establish the allegations' falsity. **The trial court determines credibility and could have disbelieved the testimony of Mr. Zumwalt and found that the allegation was not false.** *Long* clearly required testimony showing that "the victim knew the allegation was false" for the evidence to be relevant. *Long,* 140 S.W.3d at 31 ("The relevance of the prior false allegation is thus derived primarily from the fact that it was false ...").[5] Rather than speaking to V.C.'s truthfulness, this evidence, if admitted,

4. Defense counsel actually followed this practice at a different point in the trial when, despite the trial court's ruling that the matters were inadmissible, he argued that the prosecutor's questions to Ms. Clervi, the state's expert, opened the door to this previously excluded testimony. The trial court again ruled that the evidence was inadmissible.

5. The judge also noted, correctly, that the fact that this incident was six or seven years old diminishes its relevance. *See Long,* 140 S.W.3d at 31–32 ("A prior false allegation could be so remote in time ... that the prejudice outweighs the probative value.").

could have led to a distracting mini-trial on these uncharged allegations against Mr. Zumwalt. The trial court did not abuse its discretion in excluding it.

As the trial court recognized, R.C.'s testimony regarding the prior allegations of physical abuse against V.C.'s former step-father presents a closer case for admissibility. First, if believed, it does establish that there was a prior false allegation to authorities about abuse by a parent that the victim knew was false. Further, though the prior and current allegations involve different kinds of abuse (she previously alleged physical abuse and now alleges sexual abuse), this difference does not in itself make the prior allegations inadmissible. *See id.* at 30–32 (ruling that the victim's prior false allegations of physical and sexual assault were relevant and admissible in sexual assault case); *Wilson*, 256 S.W.3d at 62 ("in order to be admissible for impeachment purposes, the prior false allegations must involve the same or substantially similar circumstances as the allegations made by the victim in the current case"). The fact that the allegations involved a different type of abuse is a factor that the trial court can properly consider when determining relevance, however. "[S]imilarities between the prior false allegation and the charged offense as well as circumstances under which the allegation was made all factor into the relevance analysis." *Long*, 140 S.W.3d at 31.

Here, the trial court also could properly consider that the prior allegations were remote in time, having been made five years previously, when V.C. was only about 10 years old. The prior allegations also were made under different circumstances, as V.C. allegedly admitted making the false allegations to allow her to move in with her grandmother. There is no suggestion here that she made the allega-

tions in order to change her living situation. In fact, there was evidence to the contrary-that she wanted to remain in the Couch household. Given that the prior allegations were: (1) remote in time, (2) regarding a different type of abuse, and (3) made for a motivation not present here, this Court cannot conclude that the trial court's ruling was "clearly against the logic of the circumstances." *State v. Walkup*, 220 S.W.3d 748, 757 (Mo. banc 2007). Therefore, the trial court acted within its broad discretion in excluding this evidence. *See State v. Jaco*, 156 S.W.3d 775, 779 (Mo. banc 2005).

## III. TRIAL COURT DID NOT ABUSE ITS DISCRETION IN PERMITTING EXPERT TESTIMONY

■ Mr. Couch also contends that the trial court abused its discretion in permitting Lisa Clervi, a child psychologist called to testify by the state, to give narrative testimony that improperly vouched for the credibility of S.C. and V.C. To understand this claim, the Court must first describe Ms. Clervi's testimony in some detail.

### A. Ms. Clervi's Testimony

Ms. Clervi is a child psychologist and licensed social worker. As previously noted, she provided counseling to J.C., S.C., and V.C. regarding their sexual abuse after the initial report was made. On direct examination, she averred that the response to sexual abuse varies greatly among different individuals who experience it. On cross-examination, Ms. Clervi admitted that false allegations sometimes take place. Defense counsel then specifically asked Ms. Clervi to describe the characteristics that children who make false allegations exhibit and asked if this did not fit two of the alleged victims "to a T", as follows:

Ms. Clervi: They usually have no—they usually have no emotional reactions at all. They change their stories repeated-

ly. They usually have a hidden or ulterior motive. They have a lack of detail in their disclosures. They verbalize frequently to peers or other people around them that they have disclosed falsely. The allegations can be baseless. It depends really on the child.

**Defense Counsel:** Well, haven't you just with the exception of having admitted to their friends that they disclosed falsely haven't you described [S.C.] and [V.C.] to a T?

**Ms. Clervi:** I don't believe so.

As defense counsel had raised the issue, the prosecutor sought a ruling prior to redirect as to whether he could ask Ms. Clervi to describe why she believed that S.C. and V.C. did not fit the profile of children who make false allegations, without opening the door to the prior false allegations evidence that was excluded pretrial. The court agreed that such questions would not open the door. The prosecutor then asked Ms. Clervi, "Can you explain what specific characteristics about [V.C.] that you disagree with Mr. Hamlett's suggestion [that she fits the description of a child making false allegations]?" After defense counsel's objection that this question called for a narrative was overruled, she responded:

**Ms. Clervi:** There's nothing more that [V.C.] wanted than to be in a loving and adoptive family and she'd of [sic] done nothing to sabotage that family. When children … have an ulterior motive of disrupting their family it's because they want to be out of that family, which is something that she never wanted and something that [S.C.] never wanted. They wanted to be in an adoptive family where they would be loved and cared about for the rest of their lives and would of [sic] done nothing to sabotage that.

**Prosecutor:** And that's the impression you got after meeting with them?

**Ms. Clervi:** Yes.

Defense counsel promptly objected that the prosecutor and Ms. Clervi had "commented upon the credibility of the child" and that "there's case law that specifically prohibits that." Counsel then moved for a mistrial "as that is highly inflammatory and highly prejudicial." The trial court overruled the objection and the motion for a mistrial.

**B. Trial Court Did Not Abuse its Discretion By Permitting Ms. Clervi's Testimony.**

█ On appeal, Mr. Couch argues both that the trial court abused its discretion in permitting this testimony because the questions inappropriately called for a narrative response and because this testimony improperly commented on the credibility of the child. As both issues relate to the trial court's rulings regarding the scope and nature of Ms. Clervi's testimony, "the trial court has broad discretion." *Black v. State*, 151 S.W.3d 49, 55 (Mo. banc 2004). "A trial court will be found to have abused its discretion when a ruling is clearly against the logic of the circumstances then before the court." *Murrell v. State*, 215 S.W.3d 96, 109–10 (Mo. banc 2007).

Mr. Couch's argument that the testimony should have been excluded because the questions called for a narrative response is without merit. First, there is no ironclad rule prohibiting narrative testimony. *See, e.g., State v. Hardin* 581 S.W.2d 67, 69 (Mo.App. W.D.1979) ("Even were it assumed that the question asked … did in some degree countenance a narrative response, no absolute rule prohibits such testimony"); *State v. Wren*, 498 S.W.2d 806, 810 (Mo.App. S.D.1973) ("whether a witness will be required to testify by specific question and answer or in narrative form[ ] is discretionary and reviewable

only for abuse"). This Court has long held that the "entire subject of the manner of the examination of witnesses in open court is confided, of necessity, to the sound discretion of the trial judge." *Daudt v. Steiert,* 205 S.W. 222, 224 (Mo.1918). With respect to their alleged narrative nature, neither the questions asked nor the responses given are objectionable.

 With regard to Ms. Clervi's alleged vouching for witnesses, "[t]he general rule is that expert testimony is inadmissible if it relates to the credibility of witnesses because it invades the province of the jury. However, it is proper for a witness to testify to specific facts that discredit the testimony of another witness, as long as the witness does not comment directly on the testimony of another witness." *State v. Link,* 25 S.W.3d 136, 143 (Mo. banc 2000). Mr. Couch argues that Ms. Clervi's testimony on redirect directly commented on the credibility of V.C. and S.C. in violation of this rule.

Mr. Couch ignores that the redirect examination was aimed at replying to his questions about the credibility of V.C. and S.C. on cross-examination. When his counsel asked Ms. Clervi whether S.C. and V.C. fit her description of children who make false allegations, he opened the door to testimony on redirect explaining why Ms. Clervi believed they did not fit the description. "[W]here the defendant has injected an issue into the case, the State may be allowed to admit otherwise inadmissible evidence in order to explain or counteract a negative inference raised by the issue that defendant injects." *State v. Lingar,* 726 S.W.2d 728, 734–35 (Mo. banc 1987). Moreover, the inquiry here was brief, and the testimony adduced did not comment directly on whether S.C. or V.C. were truthful in their allegations against Mr. Couch. Ms. Clervi merely testified that children who make false allegations

often want to be removed from a home environment and that V.C. and S.C. did not want to be removed from their home. The trial court did not abuse its discretion in admitting this evidence or in denying the motion for a mistrial.

## IV. CONCLUSION

For the reasons set forth above, this Court affirms the judgment of the trial court.

All concur.