**STATE of Missouri, Respondent,**

v.

**Lamar HATTON, Appellant.**

**STATE of Missouri, Respondent,**

v.

**Richard TROY, Jr., Appellant.**

Nos. 78277, 78278.

Supreme Court of Missouri,
En Banc.

March 26, 1996.

Rehearing Denied April 23, 1996.

David L. Simpson, Office of the State Public Defender, Columbia, for Lamar Hatton.

Gary E. Brotherton, Office of the State Public Defender, Columbia, for Richard Troy, Jr.

Jeremiah W. (Jay) Nixon, Attorney General, David G. Brown, Assistant Attorney General, Jefferson City, for Respondent.

ROBERTSON, Judge.

Section 195.211, RSMo 1994, makes it illegal for any person "to distribute, deliver, [or]

manufacture ... a controlled substance." Violation of section 195.211 is a class B felony. When a person distributes a controlled substance "within one thousand feet of ... real property comprising public housing" in violation of section 195.211, the crime becomes a class A felony. § 195.218, RSMo 1994.

This is a consolidated appeal. The trial court convicted both appellants of distributing a controlled substance within one thousand feet of public housing in violation of section 195.218, RSMo 1994. Appellants claim that section 195.218 violates their right to due process because it is void for vagueness. U.S. Const. amend. V, XIV; Mo. Const. art. I, § 10. We have jurisdiction, Mo. Const. art. V, § 3, and affirm the judgment of the trial court.

## I.

On two separate occasions, Hatton sold crack cocaine to a confidential informant. The first transaction occurred 760 feet from a duplex owned by the City of Mexico Housing Authority. The second took place near a school. In a bench trial, the trial court convicted Hatton of distribution of a controlled substance within one thousand feet of public housing in violation of section 195.218, sentenced Hatton to ten years' imprisonment, and ordered the sentence to run consecutively to Hatton's ten-year sentence for selling a controlled substance within one thousand feet of a school in violation of section 195.215, RSMo 1994. Hatton did not appeal his conviction under section 195.215.

On three separate occasions, Troy sold crack cocaine to an undercover detective. These transactions all occurred at residences maintained by the City of Mexico Housing Authority. After a bench trial, Troy was convicted of three counts of distribution of a controlled substance within one thousand feet of public housing in violation of section 195.218, and he was sentenced to three concurrent terms of ten years' imprisonment.

## II.

Both appellants argue that their convictions violate due process because section 195.218, on its face, is void for vagueness due to its failure to define the terms "public housing" and "governmental assisted housing."

Section 195.218 provides:

1. A person commits the offense of distribution of a controlled substance near public housing or other governmental assisted housing if he violates section 195.211 by unlawfully distributing or delivering any controlled substance to a person in or on, or within one thousand feet of the real property comprising public housing or other governmental assisted housing.

2. Distribution of a controlled substance near public housing or other governmental assisted housing is a class A felony.

The language in the indictments charged each appellant with distribution of a controlled substance near public housing. We therefore limit our discussion to the constitutionality of the phrase "public housing." We express no opinion whether the phrase "governmental assisted housing" has a broader meaning than "public housing."

### A.

◼ Appellants argue that section 195.218 is vague on its face. They assert that the term "public housing" fails to apprise persons of ordinary intelligence of what types of housing come within the statute's reach and, therefore, such persons have no notice that their contemplated conduct is prohibited. Appellants also argue the statute is vague in that it fails to provide any enforcement guidelines to police officers.

◼ "It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Powell*, 423 U.S. 87, 92, 96 S.Ct. 316, 319–20, 46 L.Ed.2d 228 (1975), *quoting United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975). The sale of illegal drugs is not an activity protected by the First Amendment. Therefore, the statute facially violates the due process clause only if the prohibition contained in section 195.218 proscribes no comprehensible course of conduct at all and

the statute cannot constitutionally be applied to *any* set of facts. *Village of Hoffman Estates v. Flipside,* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). In defining criminal offenses, the legislature is not required to adhere to "[i]mpossible standards of specificity," *State v. Errington,* 355 S.W.2d 952, 955 (Mo. banc 1962), but rather, "due process requires no more than that the statute convey 'sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'" *In re Trapp,* 593 S.W.2d 193, 202 (Mo. banc 1980), *quoting United States v. Petrillo,* 332 U.S. 1, 8, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877 (1947).

Government-sponsored, public housing is an oft-employed tool by which this nation provides living quarters for low-income individuals and families. For this reason, the phrase "public housing" has found its way into common parlance and carries a commonly understood and accepted meaning among persons of ordinary intelligence and experience. It means publicly-owned housing operated and maintained for the benefit of low-income persons and families. *Cf.* 42 U.S.C. § 1437a(b)(1) (1994).

▉ In their briefs, appellants claim that reading the statute does not tell them whether "military barracks, public university dormitories, county jails, and veterans [sic] homes [are] included or excluded" within the meaning of "public housing." Assuming for the sake of argument that this is so, it makes no difference. It remains beyond serious dispute that a building owned by the City of Mexico Housing Authority for housing low-income persons and families falls within the commonly understood meaning of "public housing," no matter how narrowly or broadly one casts the definition of the phrase. That the phrase might be ambiguous in other settings is of no consequence in these cases. "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Village of Hoffman Estates,* 455 U.S. at 495, 102 S.Ct. at 1191. *See also State v. Young,* 695 S.W.2d 882, 883–84 (Mo. banc 1985) ("On a challenge that a statute or ordinance is unconstitutionally vague it is not necessary to determine if a situation could be imagined in which the language used might be vague or confusing; the language is to be treated by applying it to the facts at hand.") We hold that the phrase "public housing" is sufficiently clear under the facts of these cases to apprise appellants and those charged with enforcing the law that the property at issue falls within the proscription of the statute.

### B.

▉ Appellants next contend that because the language of section 195.218 contains no *mens rea* or knowledge requirement, (i.e., it is a "strict liability" statute according to appellants) it is more easily susceptible to a constitutional vagueness attack than criminal statutes that include a scienter requirement. Appellants' argument, as we understand it, is that the Court must apply a heightened scrutiny to statutory language where a party mounts a vagueness challenge under a strict liability criminal statute. This is so, appellants argue, because a conviction is easier to obtain, and a criminal defendant left more vulnerable than he would be otherwise, when the prosecution is relieved of a major obstacle—the burden of proving defendant's bad intent.

▉ Appellants correctly note that the presence of a scienter requirement will sometimes cure an otherwise vague statute. "[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice ... that [the] conduct is proscribed." *Hoffman Estates,* 455 U.S. at 499, 102 S.Ct. at 1193. *See also State v. Shaw,* 847 S.W.2d 768, 776 (Mo. banc 1993) (scienter element sufficiently cures any uncertainty as to the meaning of "unfair practices"); *State v. Mahurin,* 799 S.W.2d 840, 842 (Mo. banc 1990) ("substantial risk" is not vague term under child endangerment statute since statute required defendant to act knowingly); *State v. Dale,* 775 S.W.2d 126, 131 (Mo. banc 1989); (requirement that defendant act "knowingly" rendered statute proscribing "neglect" of nursing home residents not vague.); *State v. Young,* 695 S.W.2d 882, 885 (Mo. banc 1985) (statute proscribing "any person ... be present

thereat" a cockfight is vague because the "statute contains no requirement of an unlawful intent to give meaning to the presence provision"). Furthermore, "[b]ecause a defendant's knowledge of the consequences of his or her actions must be proven, the possibility of arbitrary convictions is negated." *State v. Mahurin,* 799 S.W.2d at 842.

The rationale behind these cases is that "since the constitutional vice in a vague or indefinite statute is the injustice to the accused in placing him on trial for an offense, the nature of which he is given no fair warning, the fact that punishment is restricted to acts done with the knowledge that they contravene the statute makes this objection untenable." *American Communications Ass'n v. Douds,* 339 U.S. 382, 413, 70 S.Ct. 674, 691, 94 L.Ed. 925 (1950). *See also Screws v. United States,* 325 U.S. 91, 102, 65 S.Ct. 1031, 1036, 89 L.Ed. 1495 (1945) (a specific intent requirement "relieve[s] the statute of the objection that it punishes without warning an offense of which the accused was unaware"); *United States v. Ragen,* 314 U.S. 513, 524, 62 S.Ct. 374, 379, 86 L.Ed. 383 (1942) ("A mind intent upon willful evasion is inconsistent with surprised innocence.").

Contrary to appellants' assertion, however, section 195.218 is not a strict liability statute. This is because section 195.218 is a punishment-enhancement provision and does not create a separate crime. The legislature has determined that the policy of this state is to attempt to create drug-free zones around public housing. To further that policy, it adopted and the governor approved a bill enhancing the punishment for distributing illegal drugs near public housing. Thus, section 195.218 expressly incorporates section 195.211 and requires a violation of the latter statute before a violation of section 195.218 occurs. Section 195.211 contains a scienter element. §§ 562.016.1; 562.026(2) RSMo 1994; *State v. Briscoe,* 847 S.W.2d 792, 794 (Mo. banc 1993).[1]

■ Appellants' real complaint is that they did not know they were within one thousand feet of public housing when they carried out their plan to sell crack cocaine. This ignorance is not a product of appellants' inability to understand the statute. It is the result of their failure to determine the existence of and their distance from public housing. The burden of ascertaining those facts lies with appellants under the statute. The due process clause simply does not require that the state prove appellant's knowledge of his proximity to public housing, nor does it require the state prove appellant's knowledge that the property is classified as public housing, before it will allow the state to enhance the punishment for a crime appellant intentionally committed. *United States v. Falu,* 776 F.2d 46, 50 (2nd Cir.1985). *See also United States v. Ofarril,* 779 F.2d 791, 792 (2nd Cir.1985), *cert. denied,* 475 U.S. 1029, 106 S.Ct. 1231, 89 L.Ed.2d 340 (1986); *United States v. Holland,* 810 F.2d 1215, 1223–24 (D.C.Cir.), *cert. denied,* 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987).

We hold that the convictions under section 195.218 did not violate appellants' right to due process.

### III.

■ Appellant Troy raises two additional issues. First, Troy asserts that section 195.218 violates the constitutional guarantee of equal protection because the statute "disproportionately affects African–Americans convicted of distributing drugs within their neighborhood and punishes them more severely than a person distributing the same drugs in a wealthier neighborhood." Appellant's brief at 6.

■ Disproportionate impact, standing alone, does not constitute an equal protection violation. *Washington v. Davis,* 426 U.S. 229, 242, 96 S.Ct. 2040, 2049, 48 L.Ed.2d 597 (1976). To prevail on an equal protection challenge, a defendant must show that a "necessary discriminatory racial purpose [is] express or appear[s] on the face of the statute" or that the statute, as applied, "invidi-

---

1. We note that the former § 562.021.2, upon which *Briscoe* relied in holding that the crime of sale of a controlled substance is *not* a strict liability crime, has been deleted from the current § 562.021. However, construing § 562.016.1 along with § 562.026(2), we reach the same conclusion.

ously discriminate[s] on the basis of race." *Id.* at 241, 96 S.Ct. at 2048.

Section 195.218 is neutral on its face. The statute makes no reference to race whatsoever. Moreover, Troy offered no evidence of a discriminatory purpose behind the enactment of section 195.218, nor did he show that the statute had been applied in a discriminatory manner. In the absence of evidence to support the claim, Troy's equal protection challenge fails.[2]

 Second, Troy argues that the trial judge erred in accepting Troy's waiver of the right to a jury trial. The record shows that at the commencement of the trial proceedings, Troy's attorney stated to the judge that Troy was "waiving jury." This statement was made in Troy's presence and Troy offered no objection at that time or at any time during or after the trial. Troy does not argue that he waived his right to a jury trial involuntarily, nor does he argue that he intended to exercise his right to a jury trial despite his attorney's contrary statement. Rather, his complaint challenges the trial court's procedure for securing a valid waiver. Troy claims that his attorney's representation that Troy was waiving the right to a jury was inadequate as a waiver on its face. According to Troy, in order for the waiver to be valid, the constitution requires the trial judge to conduct an independent examination and make a separate determination that Troy intentionally relinquished his right to a jury trial. *See State v. Bibb,* 702 S.W.2d 462, 466 (Mo. banc 1985). ("Under the Constitution and Rule 27.01(b), a waiver by the accused and an assent of the court must appear from the record with unmistakable clarity.")

 Assuming for argument's sake that the trial court should have conducted a more thorough examination to determine Troy's understanding of his waiver of his right to a trial by jury, it does not follow that the trial court's failure to do so necessarily results in a reversal of his conviction. "To preserve appellate review, constitutional claims must be made at the first opportunity," otherwise,

"[t]his Court's review is limited to gratuitous plain error." *State v. Parker,* 886 S.W.2d 908, 925 (Mo. banc 1994). Plain error exists where the trial court's error so substantially violates defendant's rights that manifest injustice or miscarriage of justice results if the error is not corrected. *Id.* at 917; Rule 30.20.

At trial, Troy admitted selling crack. These admissions were sufficient to remove any concern that the waiver of the jury trial resulted in prejudice to Troy.

### IV.

The judgments of the trial court are affirmed.

All concur.

---

**2.** Equal protection challenges under a similar statute have also failed for lack of a showing of any discriminatory purpose. *See United States v. Agilar,* 779 F.2d 123, 126 (2nd Cir.1985), *cert.*

*denied,* 475 U.S. 1068, 106 S.Ct. 1385, 89 L.Ed.2d 609 (1986); *United States v. Holland,* 810 F.2d at 1219–20.