STATE of Missouri, Respondent,

v.

David S. ROPER, Appellant.

No. WD 66668.

Missouri Court of Appeals,
Western District.

Aug. 5, 2008.

Kent Denzel, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun Mackelprang and Karen Kramer, Office of Attorney General, Jefferson City, MO, for respondent.

RONALD R. HOLLIGER, Judge.

David S. Roper ("Roper") appeals his conviction for one count of distributing a controlled substance, in violation of section 195.211[1], and two counts of distributing a controlled substance near a school, in violation of section 195.214. Roper raises four points on appeal. His first point asserts that the trial court erred in entering judgment on the verdict for sale of a controlled substance near a school because the evidence was insufficient to show that Roper knew of his proximity to the school. In his second point, Roper claims that the trial court erred in allowing him to proceed without counsel. Roper's third point alleges that the trial court erred in failing to *sua sponte* instruct the jury to disregard the prosecutor's comments during closing argument that drugs cause "us to worry about the health and safety of our children." In his fourth point, Roper claims that he is entitled to a new trial because the State has failed to produce a tape recording of one of the transactions, which was played for the jury at trial. Roper's first three points were unpreserved and will, therefore, be reviewed for plain error.

1. All statutory references are to Missouri Revised Statutes, 2000, unless otherwise indicat-

## Factual and Procedural Background

Following are the facts viewed in the light most favorable to the verdict.

Between July and December 2003, Officer Shan Rich ("Officer Rich") participated in an undercover drug investigation in Boonville, Missouri. In July, 2003, a confidential informant told Officer Rich that he had arranged a drug transaction with Roper. When Officer Rich arrived at the agreed location, Roper was on the phone planning the sale. Officer Rich and Roper then drove to another location together at Roper's direction. Roper agreed to sell Officer Rich a quarter of an ounce of marijuana for $25. Officer Rich paid Roper, and Roper told him to wait while he obtained the drugs. Between four and five minutes later, Roper returned with a substance, which subsequent testing showed was 5.51 grams of marijuana.

In December of 2003, Officer Rich met Roper at Kluck's Hallway Bar, where Roper agreed to sell him an eight ball (an eighth of an ounce of cocaine). They went to Officer Rich's truck and negotiated a price of $150. Roper walked across the street to a bank parking lot where he spoke with someone. When he returned, Officer Rich gave him the money. Roper went back to the bank parking lot and returned a few minutes later to give Officer Rich a rock of crack cocaine. Officer Rich told Roper that it appeared to be less than an eighth of an ounce of cocaine. To compensate, Roper agreed to sell Officer Rich a quarter of an ounce of marijuana for only $20. Officer Rich gave Roper the money. Roper walked back to the bank parking lot and returned with the marijuana. Officer Rich again complained that he did not receive the correct amount, but Roper said that was all he had. Lab test-

ed.

ing determined that Roper sold Officer Rich 0.75 grams of cocaine base and 1.51 grams of marijuana.

At trial, Officer Rich testified that he used a rolling tape to measure the distance of the December transactions to two neighborhood schools. He determined that the sales took place 1,278 feet from Laura Speed Elliott Middle School and 1,279 feet from St. Peter and Paul Catholic School. The State also entered into evidence a map of the area, which was not drawn to scale. The State did not produce evidence of Roper's knowledge of the schools' locations nor any evidence that would support an inference that Roper was aware of the schools.

Roper was charged with three counts: one count of distributing a controlled substance, in violation of section 195.211, and two counts of distributing a controlled substance near a school, in violation of section 195.214. A jury convicted Roper on all three counts. Having found Roper to be a prior and persistent offender, the trial court sentenced him to twenty-five years on all three counts, running concurrently. This appeal follows.

## Standard of Review

■ We review a claim of insufficient evidence to convict the defendant of the charged offense in the light most favorable to the State. *State v. O'Brien,* 857 S.W.2d 212, 215–16 (Mo. banc 1993). "Thus, evidence that supports a finding of guilt is taken as true and all logical inferences that support a finding of guilt and that may reasonably be drawn from the evidence are indulged." *Id.* at 216. "Conversely, the evidence and any inferences to be drawn therefrom that do not support a finding of guilt are ignored." *Id.* Because Roper did not file a motion for acquittal at the close

of the evidence, his claim is unpreserved, and we may review only for plain error.

"[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20.[2] Plain error is error that is evident, obvious, and clear. *State v. Hawthorne,* 74 S.W.3d 826, 829 (Mo.App. W.D.2002). "Whether manifest injustice occurred depends on the facts and circumstances of the particular case, and the Defendant bears the burden of establishing manifest injustice amounting to plain error." *State v. Campbell,* 26 S.W.3d 249, 256 (Mo.App. W.D.2000). " 'If the evidence is insufficient to sustain a conviction plain error affecting substantial rights is involved from which manifest injustice must have resulted.' " *State v. Whalen,* 49 S.W.3d 181, 184 (Mo. banc 2001)(quoting *State v. Withrow,* 8 S.W.3d 75, 77 (Mo. banc 1999)).

## Discussion

### Point I: Proximity to School

■ In his first point on appeal, Roper claims that the trial court erred in entering judgment on the guilty verdicts for Counts I and II, sale of a controlled substance near schools, because there was no evidence of Roper's knowledge of his proximity to the schools.

Section 195.214.1 provides that:

A person commits the offense of distribution of a controlled substance near schools if such person violates section 195.211 by unlawfully distributing or delivering any controlled substance to a person in or on, or within two thousand feet of, the real property comprising a public or private elementary or secondary school, public vocational school, or a

---

**2.** All rule references are to Missouri Court Rules 2008, unless otherwise indicated.

public or private junior college, college or university or on any school bus.

Violation of this section is "a class A felony which term shall be served without probation or parole if the court finds the defendant is a persistent drug offender." Section 195.214.2.

Section 195.211.1 makes it illegal to "distribute, deliver, manufacture, [or] produce ... a controlled substance." Violation of this section is a class B felony unless the substance is less than five grams of marijuana, in which case it is a class C felony. Section 195.211.3 & 4.

Roper claims that for a charge alleging violation of section 195.214, the State must prove the defendant knew he was within two thousand feet of a school. Citing a 1996 Missouri Supreme Court opinion applying a parallel provision, the State argues that proving the defendant's knowledge of a school's location is not required. *State v. Hatton*, 918 S.W.2d 790, 794 (Mo. banc 1996) (interpreting the language of section 195.218, which prohibits drug sales near public housing). *Hatton* held that section 195.218 was not a separate offense and was, instead, a penalty enhancement for violating section 195.211. *Id.* at 794. The Court reasoned that as a penalty enhancement, "the due process clause simply does not require that the state prove appellant's knowledge of his proximity to public housing." *Id.*

Despite *Hatton*, this court has always read section 195.214 as having a knowledge requirement regarding proximity to schools. *See State v. McQuary*, 173 S.W.3d 663 (Mo.App. W.D.2005); *State v. Crooks*, 64 S.W.3d 887 (Mo.App. S.D.2002); *State v. White*, 28 S.W.3d 391 (Mo.App. W.D.2000). Additionally, MAI–CR 3d

325.30, the instruction for section 195.214, has required proof of a defendant's knowledge since 1998, following an amendment of the statutes regarding application of a culpable mental state.[3]

The conflict claimed by the State as to our decisions and the MAI instruction versus *Hatton* has been resolved by the Missouri Supreme Court's recent overruling of *Hatton*. *State v. Minner*, 256 S.W.3d 92 (Mo. banc 2008).

The *Minner* court stated that "[t]he reasoning in *Hatton* is not consistent with the plain language of section 195.218." *Id.* at 95. "The *Hatton* case is overruled insofar as it indicates that section 195.218 is not a separate offense and does not require the State to prove the defendant's knowledge of proximity to public housing." *Id.* The plain language of section 195.218, at issue in *Minner*, is also present in section 195.214, "[a] person *commits the offense of* distribution of a controlled substance near schools[.]" Section 195.214.1.

The *Minner* Court continued its analysis by explaining that "[t]he necessity of proving the defendant's knowledge is further established by section 562.021.3." *Minner*, 256 S.W.3d at 95. That statute provides that "if the definition of any offense does not expressly prescribe a culpable mental state for any elements of the offense, a culpable mental state is nonetheless required and is established if a person acts purposely or knowingly; but reckless or criminally negligent acts do not establish such a culpable mental state." Section 562.021.3. Since neither section 195.214 nor section 195.211 mentions a requisite mental state, the State must prove that the defendant acted purposely or knowingly. "A person acts 'knowingly' when he or she is aware of the nature of the conduct or

---

**3.** The legislature amended sections 562.021 and 562.026 in 1997. Those statutes explain when and to which elements a culpable mental state applies when a criminal provision is not explicit.

that those circumstances exist." *Minner*, 256 S.W.3d at 95. The State needed to prove that Roper knew he was within two thousand feet of a school when he delivered the controlled substance in violation of section 195.211.

The State presented no evidence of Roper's knowledge that he was within two thousand feet of a school when he violated section 195.211. Therefore, the evidence is insufficient to sustain Roper's convictions for violations of section 195.214. Sufficient evidence was presented, however, to support a conviction for violation of section 195.211 regarding each of the three transactions. Roper's convictions for violation of section 195.214, Counts I and II, are reversed, and the case is remanded for an entry of conviction for the class B felony of delivery of a controlled substance, under section 195.211, for Count I and an entry of conviction for the class C felony of delivery of a controlled substance, under section 195.211, for Count II.

## Point II: Right to Counsel

In Roper's second point, he claims that the trial court plainly erred in allowing him to proceed to trial without counsel, in violation of his rights to due process and to counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and article 1, sections 10 and 18(a) of the Missouri Constitution. The federal and state constitutions both guarantee the right to counsel for those accused of a crime. U.S. CONST. amend. VI & XIV; MO. CONST. art. I, secs. 10 & 18(a). A defendant's waiver of counsel must be knowing and intelligent. *State v. Black*, 223 S.W.3d 149, 153 (Mo. banc 2007). Waiver must also be explicit and unequivocal. *Id.* Roper did not preserve this claim; this court reviews for plain error. Rule 30.20.

The court assigned public defender, Kathleen Brown ("Brown"), to Roper's case after he made several court appearances without an attorney and said that he could not afford counsel. Brown requested a hearing so that Roper could prove that he was indigent and that his brother and grandmother refused to cover his legal representation. The judge agreed to hold the hearing but noted that neither relative was obligated to cover his legal costs. At the hearing, Roper presented evidence that both relatives were either unable or unwilling to cover his legal fees. The court found Roper indigent and ordered Brown to represent him.

Three months later, Brown filed a motion to withdraw at Roper's request. At the hearing on the motion, Roper testified that he supported the motion because he did not feel that his attorney was properly representing him. He then requested a public defender from another county. The court told him that he could not select which defender represented him. Roper then told the court that he would remain in jail until he could "find other means." The court explained that if Brown were allowed to withdraw from his case, he would have to represent himself. The court asked him if he understood the rules of evidence. When Roper indicated that he did not, the court told him that it would not be in his best interest to proceed *pro se*. The court told Roper that if it let his counsel withdraw, she would not be able to view the physical evidence against him. Roper said that he understood and that was what he wanted. The court said that proceeding *pro se* would be "like playing in the middle of the interstate" and that even if he were innocent he may be convicted due to a poor defense. Roper said that he had no choice but to proceed without counsel. The court observed that he did have a choice and said that he was making the choice that was "probably going to cut

your head off." The court then granted the motion to withdraw and directed Brown to act as standby counsel for trial. The court told Roper that he had "lit a firecracker and you're holding it just waiting for it to go off. I wouldn't do it." Roper said that he had no choice.

One month later, Roper appeared without counsel for a hearing on his motion to suppress. The court asked him if he wanted counsel for purposes of the motion. Roper said that he was not interested in the assistance of the public defender. When asked if he wanted an attorney to represent him, he replied, "Not none of these here." The court, again, advised him of his right to counsel. Roper insisted on proceeding *pro se* but refused to sign a written waiver of counsel. The court proceeded with the motion to suppress.

The following month, Roper appeared, *pro se,* on his motion to dismiss. The court reminded Roper that he had chosen to represent himself and had been warned of the dangers of doing so. The court told him that he had never seen a *pro se* defendant win a criminal case and that he was doing himself "a horrible injustice" by proceeding without counsel. The court told Roper that he could still have a lawyer assigned to him if he wanted one because he would be at an "extreme disadvantage" otherwise. The court reminded him that he was unfamiliar with rules of evidence and procedure. Roper said that he felt he was at a disadvantage with Brown and would rather represent himself, although it may be detrimental to his case. The court found that Roper voluntarily, knowingly, and intelligently waived his right to counsel after having been advised that it was not in his best interest.

On the first day of his trial, Roper and the court once again discussed his right to counsel in chambers. Roper said that he was defenseless. The court asked him if he wanted the public defender to represent him, and he declined the offer. Roper stated that he intended to remain silent during voir dire. The court explained that the State would be presenting evidence against him during trial and that he had the right to object and to cross-examine witnesses. As the meeting closed, Roper stated, "And I'd appreciate that you'd keep that attorney, Ms. Brown, away from me. I don't want her anywhere near me."

■ Roper first argues that Brown was not able to ethically represent him under Rule 4–1.7, which states that a lawyer "shall not represent a client if . . . there is a significant risk that the representation . . . will be materially limited . . . by a personal interest of the lawyer," because she requested a hearing on his indigency status. " 'To prove an actual conflict of interest, a defendant must show that his trial attorney either acted or failed to act in a way that was detrimental to the defendant's interest and was advantageous to a person whose interest conflicted with the defendant's.' " *State v. Griddine,* 75 S.W.3d 741, 744 (Mo.App. W.D.2002)(quoting *State v. Taylor,* 1 S.W.3d 610, 611–12 (Mo.App. W.D.1999)).

The fact that Brown assumed Roper would not be eligible for her services if his relatives were able and willing to hire an attorney does not establish a conflict of interest. Roper posted bond in this case, and a defendant's ability to post bond is one of the factors a court should consider when determining eligibility for the services of a public defender. 18 CSR 10–3.010(1)(A). During any stage in the proceeding, the public defender may determine whether any person seeking services is indigent and either party may move the court to "determine whether the services of the public defender may be utilized by the defendant." 18 CSR 10–3.010(1)(B). Roper has failed to show that Brown had a

conflict preventing her from representing him. Because there was no conflict, the court did not err by not providing alternative counsel. The right to appointed counsel does not give the indigent defendant the right to be represented by counsel of his own choosing. *State v. Clay*, 11 S.W.3d 706, 714 (Mo.App. W.D.1999).

■ Roper next argues that he did not voluntarily waive his right to counsel because the court never advised him of the perils and risks of self-representation. Roper was appointed standby counsel for the entire trial and "one who has 'standby' counsel or 'hybrid' counsel has the aid and assistance of an attorney and has not actually waived counsel." *State v. Hunter*, 840 S.W.2d 850, 860 (Mo. banc 1992).

■ The corollary to the right to counsel is that "an accused also has the constitutional right to appear *pro se* and defend himself." *State v. Watson*, 687 S.W.2d 667, 669 (Mo.App. E.D.1985). "Where a defendant elects to proceed *pro se*, the record must indicate that he was offered counsel, but that he voluntarily, knowingly, and intelligently rejected the offer and waived that right." *Id.* "While no specific litany is required in every case, we believe it is essential that a record be made reflecting that a defendant was apprised of the difficulties of self-representation in terms sufficient to enable him to intelligently decide which course to follow." *State v. Wilson*, 816 S.W.2d 301, 307 (Mo. App. S.D.1991).

Roper argues that the trial court should have inquired into the defendant's intellectual capacity to make an intelligent decision as per *State v. Davis*, 934 S.W.2d 331, 334 (Mo.App. E.D.1996). He also argues that " 'waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the

charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.' " *State v. Wilson*, 816 S.W.2d at 305–06 (quoting *Von Moltke v. Gillies*, 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948)).

Roper was told on several occasions about the risks involved in self-representation. Roper acknowledged these warnings but insisted on proceeding without counsel. The record also reflects Roper's understanding of the charges filed against him and the range of punishment for those charges. In light of the fact that Roper had standby counsel throughout his trial, we believe that the trial court properly found that Roper voluntarily, knowingly, and intelligently waived his right to counsel. No manifest injustice has occurred.

**Point III: Closing Argument**

■ His third point on appeal argues that the trial court erred in failing to *sua sponte* instruct the jury to disregard the prosecutor's comments during closing argument that drugs cause "us to worry about the health and safety of our children." Roper did not object to the State's closing argument at trial; therefore, this court applies plain error review. Rule 30.20.

During the State's closing argument, the prosecutor told the jury:

> Very simply put, this is a drug case. There is no more pervasive crime in our society than the illegal sale and use of drugs. It permeates every part of society. It causes us to worry about the health and safety of our children, it impacts insurance rates. Statistics are well known, commonly known, that many crimes, a large percentage of crime, is connected either directly or indirectly to illegal drugs.

▓▓▓▓ " '[A] conviction will be reversed for improper argument only if it is established that the comment of which appellant complains had a decisive effect on the jury's determination. The burden is on the defendant to prove the decisive significance.' " *State v. Schnelle,* 7 S.W.3d 447, 456 (Mo.App. W.D.1999) (citations omitted)(quoting *State v. Parker,* 856 S.W.2d 331, 333 (Mo. banc 1993)). It is improper for the State to personalize its argument by attempting to engender fear of personal safety in the minds of the jurors. *State v. Burton,* 219 S.W.3d 778, 781 (Mo.App. E.D.2007). " 'However, a prosecutor may comment on the prevalence of crime in the community, the necessity of law enforcement to deter crime, and the evils that may befall society if a jury fails its duty.' " *Id.* (quoting *State v. Beal,* 840 S.W.2d 881, 882 (Mo.App. S.D.1992)). The State may argue "that the protection of the public rests with them." *Id.* (quoting *State v. Kee,* 956 S.W.2d 298, 304 (Mo.App. W.D. 1997)).

In *Burton,* the court found that there was no error in permitting the State to argue "this is your opportunity to clean up our community. We all know people who are affected by drugs." *Id.* at 780–81. Nor was there improper personalization when the State argued that "[w]e all know people who are affected by drugs, friends, self or whatever. This is our opportunity to help those people and our community." *Id.* at 781.

Likewise, in *State v. Allen,* 81 S.W.3d 227 (Mo.App. W.D.2002), this court found no improper personalization when the prosecutor asked the jury to send a "message that you are to protect your community, your neighborhood, your children, and your grandchildren from drunk drivers." *Id.* This court reasoned that "[t]he phrase 'your children, and your grandchildren' is a general, all—encompassing form

to include society as a whole, rather than as a reference to the jurors' specific children and grandchildren." *Id.*

Similarly, the term "our children," used by the prosecutor in this case, refers to society as a whole. The prosecutor's language was permissible and no manifest injustice occurred.

### Point IV: Tape Recording Exhibit

▓▓▓▓ In his fourth point, Roper makes no claim of trial court error but argues that he is entitled to a new trial because, on appeal, the State has failed to produce a tape recording of one of the drug transactions, which was played for the jury at trial. This unpreserved claim is reviewed for plain error. Rule 30.20.

The State recorded Roper's drug transactions and prepared transcripts of the tape recordings. When a copy was provided to Roper before trial, he created his own transcripts. Roper filed a pretrial motion to dismiss, arguing that the transcripts and the officer's narrative report were not the same. His motion was denied. At trial, Officer Rich testified to the accuracy of the transcripts. The State then introduced the recordings into evidence, with no objection. The State gave the jurors and Roper a copy of the transcript to read as the tape was played at trial. Roper did not object.

When Roper presented his case-in-chief, he attempted to introduce his own transcripts of the recordings. Finding no foundation, as the transcripts were merely demonstrative aids, the court did not allow them to be introduced. The court told Roper that he could ask Officer Rich any questions he had about the alleged discrepancies between the recordings and the transcripts or about his narrative report. Roper did not ask Officer Rich any of these questions.

On appeal, Roper requested the State to produce Exhibit 9, one of the recordings introduced at trial. The State has failed to do so, stating that it has been misplaced.

Roper claims that the State's inability to produce the tape recording on appeal has violated his right to due process in that this court cannot review Roper's claim that the trial court erred in allowing the State to provide the jury with a transcript. But, Roper's point on appeal does not require this court to review Exhibit 9. Roper does not claim that the trial court erred in submitting either the recording or the transcript. Even if he did claim that the court erred in submitting the transcript, this point would be irrelevant because the transcript was merely a demonstrative aid, not evidence.

In *State v. Christian,* 184 S.W.3d 597, 604–05 (Mo.App. E.D.2006), the Eastern District of this court rejected a request to remand based on the appellant's argument that he could have raised two additional claims on appeal if the trial court transcript had not been lost. Similarly, in *State v. Cooper,* 16 S.W.3d 680, 681 (Mo. App. E.D.2000), the appellant requested remand because there was no transcript of the State's rebuttal evidence, prior offender hearings, instruction conference, and closing argument. The court stated that an incomplete transcript only requires reversal when the appellant exercises due diligence to correct the deficiency in the record and was prejudiced by the incompleteness of the record. *Id.*

While Roper has exhibited due diligence in his attempt to correct the deficiency in the record, he has failed to demonstrate any prejudice resulting from the absence of State's Exhibit 9. Roper's request for a remand on Point IV is denied.

### Conclusion

For the forgoing reasons, Roper's convictions for violation of section 195.214, Counts I and II, are reversed, and the case is remanded for an entry of conviction for the class B felony of delivery of a controlled substance, under section 195.211, for Count I and an entry of conviction for the class C felony of delivery of a controlled substance, under section 195.211, for Count II. Count III, Roper's conviction for violation of section 195.211, is affirmed.

VICTOR C. HOWARD, Chief Judge, and PAUL M. SPINDEN, Judge, concur.