STATE of Missouri, Respondent,

v.

Ronald Gene CALVERT, Appellant.

No. WD 70004.

Missouri Court of Appeals,
Western District.

Aug. 18, 2009.

Michael T. Yonke, Kansas City, MO, for appellant.

Shaun J. Mackelprang and James B. Fransworth, Jefferson City, MO, for respondent.

Before ALOK AHUJA, P.J., JAMES M. SMART, JR., and LISA WHITE HARDWICK, JJ.

JAMES M. SMART, JR., Judge.

Ronald Calvert appeals his convictions on two counts of distributing a controlled substance within 1,000 feet of public housing in violation of section 195.218 RSMo.[1] He contends that the State failed to present sufficient evidence to support all the elements of the crime. The judgment of conviction for violations of section 195.218 is reversed, and the case is remanded for entry of a judgment of conviction on two counts of violating section 195.211 RSMo, and for resentencing accordingly.

**Statement of Facts**

Section 195.218 is a class A felony that prohibits the distribution of a controlled substance within 1,000 feet of public or government assisted housing. The following evidence was presented at Calvert's jury trial in April 2008.

In 2006, a captain with the Northern Missouri Drug Task Force was working on a drug investigation in Chariton County. On February 28, 2006, a female informant contacted the officer and told him that she had arranged to buy fifty dollars worth of methamphetamine from Ronald Calvert. At around 7:30 that evening, the informant met with the officer, who supplied her with fifty dollars and a microcassette tape recorder. The informant then went to Calvert's home in Keytesville to purchase drugs with the money that the officer had given her. She went inside the residence, where she gave Calvert fifty dollars in exchange for what was later determined to be .30 grams of methamphetamine. The entire transaction was recorded on the mi-crocassette recorder, which the informant had concealed in her clothing.

Three months later, on May 30, 2006, a male informant contacted the same officer and advised him that he had arranged to buy an "eightball" (an eighth of an ounce) of methamphetamine from Calvert for $300. After the officer wired him with a tape recorder, the informant went to Calvert's residence to buy the drugs. When he arrived, he found Calvert in the barn working on a truck. Calvert eventually handed the informant a baggy of methamphetamine. The informant paid Calvert $300 with money the officer had given him and left with 2.54 grams of methamphetamine. That transaction also was tape recorded.

Calvert was charged with two counts of distributing a controlled substance near public housing. At Calvert's trial, the officer was asked where any "public housing" was in relation to Calvert's residence. The officer responded that "Keytesville Senior Housing" is located "just north" of Calvert's residence and is visible from the residence. The officer stated that someone driving to Calvert's residence from Keytesville would drive right by the senior housing complex on the way there.

The State introduced two photographs that the police had taken at the senior housing development. One depicted what appear to be the corners of two single-story buildings and a sign which identifies the property as "Keytesville Senior Housing." The other photograph was a close-up view of the same sign. The sign listed two telephone numbers and included a small logo, under which are the words: "equal housing opportunity."

---

1. All statutory references are to the Revised Statutes of Missouri (RSMo), Cumulative Supplement 2003, except where otherwise noted.

Deputy Boeger of the Chariton County Sheriff's Department stated that Calvert's property is visible from the housing facility. Boeger testified that he measured the distance between the facility and Calvert's property by running a measuring wheel along Route K. He said the property of the senior housing facility is roughly 627 feet from Calvert's property. He did not purport to measure from the senior housing property to the two points of sale on Calvert's property, one being inside Calvert's residence, and one being at Calvert's barn on the property. No evidence was presented as to the dimensions of Calvert's property.

Calvert did not testify. The jury found Calvert guilty of both counts. The jury recommended an eighteen-year sentence on count I and a twenty-year sentence on count II. Calvert filed a motion for new trial, arguing that the State failed to prove that he knowingly distributed a controlled substance within 1,000 feet of public housing. The motion was denied. The court sentenced Calvert to two, concurrent fifteen-year prison terms.

Calvert appeals on the basis that the evidence was insufficient to support his convictions.

**Standard of Review**

Appellate review of a sufficiency of the evidence claim "is limited to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Wilson*, 256 S.W.3d 58, 62 (Mo. banc 2008). We view the evidence in the light most favorable to the verdict, accepting all favorable evidence and inferences therefrom as true and disregarding the evidence and inferences to the contrary. *State v. Minner*, 256 S.W.3d 92, 94 (Mo. banc 2008). In that light, we consider whether the evidence would permit a reasonable juror to find each element beyond a reasonable doubt. *State v. Whalen*, 49 S.W.3d 181, 184 (Mo. banc 2001). We are mindful that a reviewing court "may not supply missing evidence, or give the [State] the benefit of unreasonable, speculative or forced inferences." *Id.*

**Discussion**

Calvert contends that the trial court erred in overruling his motions for acquittal and for new trial because the State did not prove beyond a reasonable doubt that he violated section 195.218 by knowingly delivering a controlled substance within 1,000 feet of public housing or other governmental assisted housing. In point I, Calvert says the State failed to prove that he *knew* he was within 1,000 feet of public housing when he delivered a controlled substance. Calvert argues in point II that the State failed to prove that the housing facility in question was, in fact, located within 1,000 feet of the actual site of the drug transactions. Because we conclude that Calvert's first point warrants reversal, it is unnecessary to address his second claim of error.

Section 195.218.1 provides that:
A person commits the offense of distribution of a controlled substance near public housing or other governmental assisted housing if he violates section 195.211 by unlawfully distributing or delivering any controlled substance to a person in or on, or within one thousand feet of the real property comprising public housing or other governmental assisted housing.

Violation of *this* statute is a class A felony. Section 195.218.2. A different section of the criminal code governs generally the sale of controlled substances in other places. Under section 195.211.1, the distribution, delivery, manufacture, or production of a controlled substance, with ex-

ceptions not applicable here, is a criminal offense. Violation of *that* statute is a class B felony. Section 195.211.3.

In *State v. Minner*, the Missouri Supreme Court held that section 195.218 is a separate offense (not an enhancement of section 195.211), and that in order to sustain a conviction on that offense, the State must prove the defendant's knowledge of his proximity to public housing. 256 S.W.3d at 94–95. The Court rejected the State's argument that the statute is simply a penalty enhancement that does not require such knowledge, overruling *State v. Hatton*, 918 S.W.2d 790 (Mo. banc 1996). *Id.* The Court based its finding on the statute's unambiguous language, which calls it an "offense" ("a person commits *the offense*") and sets forth two distinct elements of the "offense": (1) unlawfully distributing a controlled substance in violation of section 195.211; and (2) doing so within 1,000 feet of public housing. *Id.* at 95. The Court then determined that because neither section 195.218 nor 195.211 specifically mentions a requisite mental state, the State must prove that the defendant acted "purposely or knowingly." *Id.*; *see* section 562.021.3, RSMo 2000 ("if the definition of any offense does not expressly prescribe a culpable mental state for any elements of the offense, a culpable mental state is nonetheless required and is established if a person acts purposely or knowingly"). A person acts "knowingly" with respect to his conduct or to attendant circumstances, *"when he is aware* of the nature of his conduct or *that those circumstances exist."* Section 562.016.3, RSMo 2000 (emphasis added). Thus, the Court concluded that in order to convict a defendant of violating section 195.218, the State must prove that the defendant was aware that he was within 1,000 feet of public or government assisted housing when he delivered the controlled substance. *Minner*, 256 S.W.3d at 95.

Here, the verdict director required the jury to find that Calvert delivered a controlled substance, that he did so within 1,000 feet of public housing, and that he "acted knowingly" "with regard to the facts and circumstances submitted in the instruction." The State notes that the element of knowledge may be inferred from circumstantial evidence, citing *State v. Collins*, 601 S.W.2d 640, 641 (Mo.App.1980). While the defendant's awareness may be shown by circumstantial evidence, such evidence must be sufficient to allow a fact finder to infer beyond a reasonable doubt that the defendant possessed such awareness. *See Whalen*, 49 S.W.3d at 184.

The State says it established the element of awareness or knowledge by showing: (1) that the senior housing complex was 627 feet from Calvert's residence; (2) that the complex was visible from Calvert's residence; and (3) that the most direct route to the nearest town, Keytesville, was Highway K, which would have taken Calvert directly past the housing complex (and past its sign) on his way into town. Based on this evidence and the two photographs of the sign introduced at trial, the State says, "the jury could reasonably infer that Calvert knew the location of the public housing and its proximity to his home."

There was no evidence that Calvert was familiar with the residents of the senior housing or that he had discussed the nature of their leases. There was also no evidence as to how long Calvert had resided at that location.

The State argues that Calvert would have had notice from the sign that the facility was "public housing." The question is whether that sign provides notice that the housing development was public or governmental. The State mentions that the sign is "bureaucratic-looking," and in-

cludes a "little logo," and indicates that the complex offers an "equal housing opportunity." The housing depicted in the photographs is ranch-style housing that does not have an institutional look. The only thing that arguably looks like it could be governmental is the sign, which is comprised of basic white background with black letters. Nothing on the sign indicates that the housing is "public" or governmentally-supported housing, while the sign does indicate that the property presents an "equal housing opportunity." The State concedes, however, that even facilities that are wholly private in nature frequently employ such terminology. There is no evidence in the record that the style, dimensions, and content of the sign are universally recognized as indicating "public housing." While it is inferable from this evidence that Calvert was aware of the *existence* of the "Keytesville Senior Housing" facility a short distance from his property, we fail to see that the evidence was sufficient to allow a jury to infer beyond a reasonable doubt that he would have had notice that the housing was "public" or "governmental assisted housing."

The State also says that because Keytesville is a small town, the jury could have inferred that Calvert, as a member of the community, "would know that the housing . . . north of his residence is public or receives assistance from the government." We fail to see that the fact that Keytesville is a small community would automatically impart this kind of knowledge to Calvert. Again, the circumstantial evidence is insufficient to allow an inference beyond a reasonable doubt that Calvert knew that he was within 1,000 feet of a public housing facility when he distributed a controlled substance.

In cases where convictions for greater offenses are overturned for insufficiency of the evidence,

the reviewing court may enter a conviction for a lesser offense if the evidence was sufficient for the jury to find each of the elements and the jury was required to find those elements to enter the ill-fated conviction on the greater offense.

*State v. White,* 28 S.W.3d 391, 397 (Mo. App.2000) (*quoting State v. O'Brien,* 857 S.W.2d 212, 220 (Mo. banc 1993)). *See also Minner,* 256 S.W.3d at 95–96 (remanding for an entry of conviction on the class B felony of section 195.211 after finding the evidence insufficient to sustain a conviction under section 195.218 as to the "knowledge" element); *State v. Roper,* 268 S.W.3d 392, 397 (Mo.App.2008) (remanding for entry of conviction on the lesser offense of section 195.211 after finding the evidence insufficient to sustain a conviction for distributing drugs near a school, section 195.214, on the same basis). Here, Calvert does not dispute that the State presented sufficient evidence to prove that he distributed methamphetamine to the two informants in violation of section 195.211, a class B felony. Because there was sufficient evidence to support a conviction for the lesser offense, the proper remedy is to remand for entries of convictions on that offense.

## Conclusion

The judgment is reversed and remanded for entry of conviction on two counts of distributing a controlled substance in violation of section 195.211 and for resentencing in accordance with that offense.

All concur.