**Mervin BRANYON, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. ED 92229.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 24, 2009.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 12, 2010.

Application for Transfer Denied
March 23, 2010.

N. Scott Rosenblum and Gil Sison, Clayton, MO, Brocca L. Smith, St. Louis, MO, for appellant.

Chris Koster, John M. Reeves, Jefferson City, MO, for respondent.

## KENNETH M. ROMINES, C.J.

### Introduction

Mervin Branyon (Appellant) appeals from the denial of his Missouri Supreme Court Rule 29.15 motion for post-conviction relief following an evidentiary hearing in the Circuit Court of the City of St. Louis. Appellant sought to vacate his convictions of one count of attempted first degree statutory sodomy, § 564.011 [1], and one count of first degree child molestation, § 566.067. We affirm.

### Factual and Procedural Background

Viewed in the light most favorable to the verdict, the evidence adduced at trial showed the following:

Appellant lived with his wife and five children, one of whom was C.B., who at the time of the alleged incident was 11 years old. While C.B. was in her room Appellant walked in and asked if she wanted to play. Appellant started tickling her and after approximately five minutes he touched C.B.'s chest and also touched her vagina area beneath her clothing. Appellant asked C.B. to not tell anyone of the incident. The next morning, a crying C.B.

told her brother of the incident, she later told her sister and mother. Mother confronted Appellant, but he denied the allegations. Police were not informed of the matter until a year later when the police were called regarding a domestic dispute between C.B. and her sisters. At that time C.B. told the police officer dispatched to their house about Appellant's alleged actions.

At trial there was no physical evidence. The evidence consisted of the testimony of C.B., Appellant, C.B.'s brother, and law enforcement officers who interviewed C.B. Near the end of the trial Appellant's counsel asked Appellant whether he had ever been in trouble before. The prosecutor, on cross-examination, then asked about Appellant's arrest history and Appellant then admitted that he had been arrested for what he recalled as "assault of a child."

On 22 September 2006 Appellant was found guilty by a jury of one count of attempted first degree statutory sodomy and one count of first degree child molestation. Appellant was sentenced to 10 years in the Missouri Department of Corrections. Appellant filed a notice of appeal from the trial court's judgment and subsequently voluntarily dismissed that appeal and filed a motion to vacate his sentence under Rule 29.15. The motion court denied Appellant's request for relief following an evidentiary hearing. This appeal follows.

### Points on Appeal

Appellant first alleges that the motion court erred in denying his request for post-conviction relief because defense counsel was ineffective for failing to investigate and interview Eva Speights and in failing to call Eva Speights and Shantell Branyon as witnesses. Second, Appellant

---

**1.** All statutory references are to RSMo 2000. unless otherwise noted.

alleges that the motion court erred in denying his request for post-conviction relief because his defense counsel opened the door to evidence of his prior arrest and for failing to advise him of the potential consequences of his decision to testify and the possibility that the door could be opened to prior bad acts.

## Standard of Review

A defendant has received ineffective assistance of counsel if counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances, and this deficient performance resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 676–678, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Appellate review of the motion court's ruling is limited to determining whether its findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k). The motion court's findings of fact and conclusions of law are clearly erroneous only if the reviewing court, having examined the entire record, is left with the definite and firm impression that a mistake has been made. *Rousan v. State*, 48 S.W.3d 576, 581 (Mo. banc 2001)

## Discussion

 Appellant claims that his defense counsel was ineffective for failing to call witnesses who he alleges could have provided him with exculpatory testimony. During an evidentiary hearing the motion court heard the testimony of Shantell Branyon who testified that she met with defense counsel prior to the trial. During her meeting with counsel she recommended that Eva Speights should be interviewed because previously C.B. made an accusation to Speights that she had been raped by a homeless man in the alley. Appellant alleges that the prior accusation was false. In certain circumstances, it is permissible for a defendant to introduce extrinsic evidence of prior false allegations. *State v. Long*, 140 S.W.3d 27, 31 (Mo. banc 2004). However the person seeking to introduce such testimony must demonstrate that the prior allegation in question was, in fact, false and that he or she knew that it was false. *State v. Couch*, 256 S.W.3d 64, 69–70 (Mo. banc 2008). Here, there was no proof that the prior accusation was false. C.B. never retracted her accusation. While the police noted that there were different versions of the accusation that does not, in and of itself, prove the accusation to be false. The motion court determined that this did not constitute a false accusation, and we do not second-guess the motion court's determination of witness credibility. *State v. Dunmore*, 822 S.W.2d 509, 512 (Mo.App. W.D.1991). Point denied.

 Appellant's second claim is that defense counsel was ineffective for opening the door to evidence of his prior arrest and for failing to advise him of the potential consequences of his decision to testify and the possibility that the door could be opened to prior bad acts. Evidence of prior arrests is generally not admissible to impeach the credibility of a defendant. However, such evidence is admissible if the defendant opens up the issue of prior arrests. *State v. Thomas*, 878 S.W.2d 76 (Mo.App. E.D.1994). Appellant's counsel opened the issue of prior arrests when he asked Appellant if he had ever been in trouble.

The motion court found that while defense counsel's question to Appellant was inadvisable, as was any failure to fully advise Appellant prior to testifying, there was no reasonable probability that the result at trial would have been different if this matter was not disclosed at trial. Thus, Appellant suffered no prejudice from defense counsel opening the door to

his prior arrest because the State made only a brief reference to the matter. The motion court's decision was not clearly erroneous. The evidence of Appellant's other arrest was not emphasized by the prosecution. It was not alluded to again after Appellant's testimony, and it was not in the prosecution's closing argument. Additionally, there was significant credible evidence of Appellant's guilt at trial in the form of the testimony of the other witnesses.

Finally, there was no evidence in the record to prove Appellant's allegation that he was not aware of the consequences of testifying. Appellant suffered no prejudice. Point denied.

## Conclusion

The motion court did not clearly err in denying Appellant's Rule 29.15 request for post-conviction relief. We affirm.

GEORGE W. DRAPER III, J., concurs.

KURT S. ODENWALD, P.J., dissents in separate opinion.

KURT S. ODENWALD, Presiding Judge, dissenting.

I respectfully dissent. I would reverse and remand for a new trial because the motion court clearly erred when it ruled Movant was not prejudiced by his trial counsel's actions, which opened the door to allowing the State to introduce otherwise inadmissible evidence of Movant's prior arrest.

## Background

Although the majority opinion accurately summarizes the facts of this case, the recitation of facts is somewhat abbreviated, and does not include certain matters which are germane to this dissent. Movant was convicted of both attempt to commit statutory sodomy and child molestation following a jury trial. The State's evidence consisted of testimony from Victim, Victim's brother (Brother), who is also Movant's son, and Officer Robert Jauer (Officer Jauer). Movant testified on his own behalf.

During voir dire, the State discussed with the jury the value of testimonial evidence. The State specifically questioned individual venire persons whether testimonial evidence from one witness would be sufficient for them to support a conviction, or whether they would require the State to produce additional evidence, such as additional witnesses, corroborating testimony, or physical evidence, in order to return a verdict of guilty. The State focused a significant portion of its voir dire on the credibility of witness testimony, inquiring as to whether the prospective jurors would be able to convict a defendant based on the determination of one witness's credibility over another. The State specifically asked the prospective jurors if they would be able to find guilt beyond a reasonable doubt in a "he/said, she/said" situation.

## Evidence Presented at Trial

The evidence presented at trial consisted exclusively of witness testimony. The following testimonial evidence relevant to this appeal was adduced at trial.

### A. Victim's Testimony

Victim testified, that one night during the summer of 2002, she was home with Movant, Brother, and her older sister while her mother was at work. Victim was eleven years old at the time and was alone in her bedroom being punished. Brother was in his room that evening, and the older sister was sleeping in their parents' bedroom. Victim testified that Movant came into her bedroom and asked her if she wanted to "play," which she explained usually meant he would tickle her. Victim stated that Movant began tickling her,

which continued for about five minutes. Movant then told Victim, "If you don't tell nobody, I'll let you off punishment." Victim testified that Movant then "started feeling on [her] chest," under her shirt and bra. Victim also testified that Movant "went down in [her] pants and started feeling on [her] vagina area." Victim then told Movant that she did not feel good and that she "knew what he was doing."

Victim testified that the next morning, which was a Sunday, she told Brother what happened. Brother told Victim to tell their mother. Instead of talking to her mother, Victim told one of her sisters that "a friend of [hers] was having a problem" and explained the situation. After her sister advised that she should tell, Victim told her sister what happened and her sister took her to their mother. Victim told her mother what happened, and mother called Movant at work and asked him about the incident. Victim was not with her mother as she spoke to Movant on the phone. Mother later told Victim that Movant denied the incident. No one contacted any law enforcement authorities at that time.

Victim testified that after she told her mother about the incident, her home life began to change. Victim started running away more and "everything like that." More than a year later, Victim stated that she "got into a real big old fight with [her] sisters" and they called the police. When the police came to her house, Victim then told the police about the incident that occurred with Movant during the prior year. The police placed a hotline call to the Division of Family Services (DFS) and Victim was taken into custody.

Victim testified that she never told Brother or her mother that the incident did not take place, but said that she did tell mother she would change her story in order for her mother to have Movant back.

## B. Brother's Testimony

Brother testified that, on a Sunday morning during the summer of 2002, Victim came to him "a bit hysterical," and told him about an incident with their father, Movant. Brother testified that at that time he told Victim, "you are lying, daddy did not touch you," and then he left the house to go to church. Brother also testified that he talked to Victim several times about the incident after Victim first approached Brother that Sunday morning. Brother testified that Victim told him that she was sorry for breaking apart the family, and also told him on a number of occasions that the incident with Movant did not happen.

## C. Officer Jauer's Testimony

Officer Jauer testified that he was a police officer in the St. Louis City Police Department working with the sex crimes, child abuse unit. In the spring of 2004, he was working with the child abuse unit and he became involved in Victim's case. Officer Jauer testified that, after a DFS hotline referral came in regarding Victim, he spoke with the DFS investigator and then went to Victim's residence to speak with her. He testified that Victim told him that when she was eleven years old, approximately a year and a half before, "she was up late one night playing in her room, that everyone else was asleep except for her father." Officer Jauer went on to testify that Victim told him:

... Her dad came into the room, asked her if she wanted to play. She said that she did. He then asked what she wanted to play. She told me that she liked when her dad tickled her, so she asked her dad to tickle her.

She said while she was being tickled, her dad touched her chest and her private area.

Officer Jauer also testified that Victim told him that when Movant was "finished touching her he said to her that if she didn't tell anyone she would be off of punishment"

#### D. Movant's Testimony

Movant testified on his own behalf at his trial and specifically denied the incident with Victim. Movant testified that on the night in question he returned home from taking his wife to work for her night shift, and found Victim watching television. Movant scolded Victim and told her to go back to bed because her bedtime was 10 p.m. on the weekend. Movant testified that he did not wrestle with or tickle Victim that night.

During direct examination, Movant was asked by his trial counsel (Trial Counsel), "You haven't been in any trouble?" to which Movant replied, "No." Trial Counsel then asked, "This is your first time to court?" and Movant replied, "Yes, sir." After this exchange, Trial Counsel concluded his questioning and the prosecutor asked to approach the bench, during which the following conversation took place out of the jury's presence:

> [Prosecutor]: Your Honor. I would just point out I believe that [Trial Counsel] opened the door in asking him "You haven't been in any trouble before, have you," and he has been. He's got assault third arrests.
>
> [Trial Counsel]: That's an arrest.
>
> The Court: Sir, that is the classic open the door question. The scales on evidence in all 50 states, all federal circuits, a defendant is asked—and it's wide open—ever been in trouble.
>
> [Trial Counsel]: All right. Just ask him.
>
> The Court: Arrests come in.

At the end of the State's cross-examination, the prosecutor asked Movant about any prior trouble:

> [Prosecutor]: You did mention, [Movant], that you've never been in trouble before. This is the only time you've ever been in trouble?
>
> [Movant]: As far as court wise, yes.
>
> [Prosecutor]: But you have been arrested for assault; is that correct?
>
> [Movant]: Assault?
>
> [Prosecutor]: Uh-huh. Summer of 2003.
>
> [Movant]: Assault? Oh, okay. The child assault. Yes, I was arrested for that.

Trial Counsel did not ask Movant any follow-up questions regarding the assault arrest on re-direct examination, or otherwise attempt to rehabilitate Movant's testimony and regarding the arrest for child assault.

#### Closing Argument

During closing argument, the State again called the jury's attention to the issue of witness credibility, which the State originally raised during voir dire. The prosecutor argued to the jury that "this whole case is the word of a 16 year old girl." The State specifically referred the jury back to its questioning during voir dire, noting, "We spent a lot of time on testimony and is testimony alone sufficient for you to convict the defendant if you believe it beyond a reasonable doubt. Is one witness sufficient for you or would you require more if you believe that witness beyond a reasonable doubt." The State went on to argue that Victim's testimony was more credible and should be believed over that of Movant.

#### Motion for Post–Conviction Relief

Following his sentencing and appeal, Movant filed a Motion to Vacate, Set Aside or Correct Judgment or Sentence and Re-

quest for an Evidentiary Hearing (Motion for Post–Conviction Relief). In his Motion for Post–Conviction Relief, Movant alleged Trial Counsel was ineffective for a number of reasons, including "opening to the door to [M]ovant's prior arrest by direct questioning on the matter while Movant was on the witness stand."

An evidentiary hearing was held on Movant's Motion for Post–Conviction Relief on May 16, 2008. Movant testified at the evidentiary hearing regarding his prior arrest and the admission of the arrest at trial:

[Motion Counsel]: When you talked to [Trial Counsel] about whether or not you should testify, did he warn you that if you did testify the fact that you had been arrested before could come out to the jury?

[Movant]: That was never mentioned.

The Court: Well, I don't know if he could have even said it that way. Let me ask you this: Did he tell you that he was going to try to get out to the jury that you have like a clean record?

[Movant]: No. He never mentioned that.

The Court: So you didn't know that he was going to ask you questions along the lines of have you ever been in trouble before or anything like that?

[Movant]: No. No. We never went over anything like that, Your Honor.

[Motion Counsel]: So is it fair to say you didn't know that if you answered those questions that your prior arrests would come up?

[Movant]: Right.

[Motion Counsel]: And you didn't know the jury would know about that if you testified then?

[Movant]: Right. Correct.

Movant also testified that his prior arrest was a misdemeanor and not a sex offense. This clarification as to the nature of Movant's prior arrest was not presented to the jury during cross-examination and trial counsel did not engage in any re-direct examination of Movant. The only testimony the jury heard regarding Movant's prior arrest was that Movant had been arrested for child assault in 2003.

Trial Counsel also testified at Movant's motion hearing, but he was unable to recall any specifics of his representation of Movant. Trial Counsel testified he could not locate his file on the case. Trial Counsel further testified:

[Motion Counsel]: Do you remember when [Movant] took the stand to testify on his own behalf?

[Trial Counsel]: Yes.

[Motion Counsel]: Do you remember that one of the questions that you asked him was had he ever been in trouble before? Do you recall that question?

[Trial Counsel]: No.

[Motion Counsel]: So you don't recall then that asking that question opened the door to a prior arrest of his?

[Trial Counsel]: No, I don't.

[Motion Counsel]: Do you recall talking to him about the possibility of that happening if he testified?

[Trial Counsel]: I don't have any specific recollection this morning about that.

The motion court issued its Findings of Fact, Conclusions of Law and Order (Judgment) denying Movant's Motion for Post–Conviction Relief on October 17.2008. With regard to Movant's claim that his Trial Counsel was ineffective for opening the door to evidence of Movant's prior arrest, the motion court found that Trial Counsel's question to Movant regarding previous "trouble" and "the subsequent failure to establish that Movant was not convicted of the offense [was] inadvisable, as was any failure to fully advise Movant

prior to testifying." However, the motion court found Trial Counsel's conduct not prejudicial because the court did "not believe there [was] a reasonable probability that the result at trial would have been different if this matter was not disclosed at trial." The court noted that the State's cross-examination of Movant on the matter was brief, the evidence of Movant's prior arrest was not emphasized by the State nor was it raised in the State's closing argument, and there was significant credible evidence of Movant's guilt at trial.

## Discussion

For relief based on claims of ineffective assistance of counsel, Movant must show by a preponderance of the evidence that (1) his counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances and (2) his counsel's deficient performance prejudiced him. *Anderson v. State,* 196 S.W.3d 28, 33 (Mo. banc 2006), *citing Strickland v. Washington,* 466 U.S. 668, 687–92, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Movant must satisfy both the performance prong and the prejudice prong to prevail on an ineffective assistance of counsel claim. *Workes v. State,* 751 S.W.2d 414, 415 (Mo.App. E.D.1988).

In examining the first prong of the *Strickland* test, "[i]t is presumed that counsel's conduct was reasonable and effective." *Anderson,* 196 S.W.3d at 33. Movant must overcome a strong presumption that his trial counsel provided competent representation by demonstrating that his counsel's representation "fell below an objective standard of reasonableness." *Id.* "Reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." *Id.*; *see also Roper v. State,* 233 S.W.3d 744, 746 (Mo.App.

S.D.2007) ("Counsel is not ineffective for pursuing reasonable trial strategy.")

To satisfy the second prong of the *Strickland* test and prove prejudice, Movant must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Anderson,* 196 S.W.3d at 33. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* at 33–34.

## Trial Counsel Failed to Exercise Customary Skill and Diligence

In his second point on appeal, Movant claims that Trial Counsel failed to act as a reasonably competent attorney because Trial Counsel's questioning of Movant during direct examination permitted the State to cross-examine Movant regarding otherwise inadmissible testimony of Movant's prior arrest. Movant further claims that Trial Counsel failed to advise Movant regarding his right to testify and the perils thereof. Specifically, Movant alleges his Trial Counsel's failed to inform him of the possibility that his prior arrests could be exposed to the jury if Movant testified. But for Trial Counsel's questioning of Movant, the jury would not have learned that Movant had a prior arrest for a "child assault." But for Trial Counsel's failure to rehabilitate Movant on re-direct examination, the jury would have learned that Movant's prior arrest for "child assault" was an arrest for a misdemeanor, did not involve any allegations of sexual abuse, and did not result in a conviction of any kind.

I am troubled by the motion court's rejection of Movant's claims given the record before us. The record is clear that the outcome of the trial necessarily would be predicated on the jury's assessment of witness credibility. The posture of this case, as initially framed by the State during voir dire and underscored again in closing ar-

gument, magnifies the potential harm of Trial Counsel's conduct during trial.

After a thorough review of the evidence, I am left with no option but to conclude that Movant's Trial Counsel was ineffective by failing to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances by allowing evidence of Movant's prior arrest to be introduced at trial, and then failing to make any attempt to mitigate the potential damage to Movant's credibility caused by such evidence.

It is well established that evidence of a defendant's prior arrests is generally not admissible to impeach a defendant's credibility. *State v. Moyers,* 266 S.W.3d 272, 280 (Mo.App. W.D.2008). Such evidence is admissible, however, if the defendant has "opened up" the issue of prior arrests. *Id.* Once a defendant introduces evidence of his own good character at trial, he may be impeached with his prior arrests to test his good character and credibility as a witness. *Id.* When a defendant testifies that he has never been in "trouble," he opens the door to prior arrests and earlier acts of misconduct. *State v. Collier,* 892 S.W.2d 686, 690 (Mo.App. W.D.1994). *See also State v. Macon,* 547 S.W.2d 507, 514 (Mo.App.1977) ("Where the defendant in direct examination voluntarily opens up the subject that he is a person of good character and testifies that he has never been in any 'trouble' before and hence is less likely to commit a crime than a person not of good character, it is permissible for the state to attempt to impeach the defendant's efforts to present to the jury a record of previous good conduct by showing prior arrests or criminal charges for the purpose of testing (a) whether he truthfully is a person of good character and (b) his trustworthiness and credibility as a witness in his own behalf.").

Following Trial Counsel's examination of Movant regarding the allegations of sexual abuse made by Victim, Trial Counsel asked Movant the one question every criminal defense attorney knows not to ask should the defendant have prior arrests the defense wishes to keep from the jury:

[Trial Counsel]: You haven't been in any trouble?

[Movant]: No.

[Trial Counsel]: This is your first time to court?

[Movant]: Yes, sir.

Trial Counsel concluded his direct examination of Movant with this exchange. The State immediately sought to introduce evidence of Movant's prior arrest claiming that Trial Counsel "opened the door" to Movant's prior arrests by asking the question about prior "trouble." The trial court agreed, pointing out, "Sir, that is the classic open the door question. The scales on evidence in all 50 states, all federal circuits, a defendant is asked—and it's wide open—ever been in trouble." Thus, the trial court ruled to allow prior arrests into evidence.

The State then cross-examined Movant regarding the allegations of abuse made by Victim. At the end of the State's cross-examination, the prosecutor raised the issue of Movant's prior arrest:

[Prosecutor]: You did mention, [Movant], that you've never been in trouble before. This is the only time you've ever been in trouble?

[Movant]: As far as court wise, yes.

[Prosecutor]: But you have been arrested for assault; is that correct?

[Movant]: Assault?

[Prosecutor]: Uh-huh. Summer of 2003.

[Movant]: Assault? Oh, okay. The child assault. Yes, I was arrested for that.

On re-direct examination, Trial Counsel did not ask Movant any additional questions regarding the arrest. The record is clear that Trial Counsel made no effort to rehabilitate Movant's testimony with information that his prior arrest was for an alleged misdemeanor, did not involve allegations of sexual abuse, and did not result in a guilty plea or conviction, but was instead dismissed. Contrary to his testimony that he has never been in trouble, the last words jurors heard from Movant at trial was that he had been arrested for a child assault. The potential impact of these words is obvious.

Movant testified at his motion hearing that Trial Counsel never discussed with him or warned him that, should he testify on his own behalf, his prior arrests could possibly be presented to the jury. Movant testified that Trial Counsel did not tell him that he was going to attempt to demonstrate to the jury that Movant had a clean record. Movant testified he was unaware that Trial Counsel was going to ask him questions regarding any prior trouble, and had no knowledge that, if he answered such questions, he could be questioned concerning his prior arrest. At the motion hearing, Trial Counsel was unable to remember any particulars or details of his representation of Movant, and was unable to refute any of Movant's claims.

In its Order denying Movant's Motion for Post–Conviction Relief, the motion court acknowledged the deficiencies in Trial Counsel's representation, and found that "Trial [C]ounsel opened the issue of prior arrests with his question 'You haven't been in any trouble.'" The motion court further found that Trial Counsel's question regarding prior trouble, and his subsequent failure to establish that Movant was not convicted for the offense, was "inadvisable, as was any failure [by Trial Counsel] to fully advise Movant prior to testifying."

However, the motion court also concluded that Movant was not prejudiced by Trial Counsel's representation and found that there was no "reasonable probability that the result at trial would have been different if this matter was not disclosed at trial." After noting that the cross-examination of Movant was brief and that the evidence of Movant's prior arrest was not emphasized by the State or raised in the State's closing argument, the motion court found that there was "significant credible evidence of Movant's guilt at trial."

I find the motion court's characterization of Trial Counsel's actions as "inadvisable" fails to sufficiently address the gravity of Trial Counsel's conduct, and the corresponding potential negative impact on Movant's defense against the criminal charges for which he was tried. Trial Counsel's representation of Movant was inadequate and fell below standards of a reasonably competent attorney under similar circumstances. *Anderson,* 196 S.W.3d at 33. Accordingly, whether the motion court's judgment should be reversed or affirmed is wholly dependent upon an analysis of the prejudice resulting from Trial Counsel's conduct.

*Movant Was Prejudiced by Trial Counsel's Actions*

Examining the record and evidence presented at Movant's trial, there is no dispute that the outcome of the State's prosecution of Movant rested on the credibility of the witnesses. Although Brother and Officer Jauer also presented testimony at trial, I believe the record before us demonstrates this case to be a classic "he said / she said" scenario where the determination of guilt is dependent on the credibility of the victim and alleged perpetrator. The State's extensive voir dire on the issue of witness credibility strongly supports such a conclusion.

Here, Victim testified about the details of the alleged incident and Officer Jauer recited the statements Victim made more than a year after the time the alleged incident occurred; there was no other corroborating evidence presented by the State to support Victim's allegations. Although Brother testified Victim told him of the incident the next morning, he also testified that Victim later told him she was not telling the truth. The alleged abuse was not reported to any authorities at the time of the alleged incident. The circumstances under which Victim told authority about the incident also raise some concern. Victim first told authorities about the alleged incident one and one half years after the alleged occurrence, and then, only in the heat of a family quarrel. At trial, no physical evidence of the alleged crime was presented, nor did the State present any eyewitness or corroborating witness testimony. On the other hand, Movant testified that the incident never occurred, and that he had punished Victim by sending her to her room prior to her telling Brother of the allegations. Brother testified that Victim admitted to fabricating the incident.

The evidence presented to the jury of Movant's guilt was primarily Victim's testimony. The jury was left to determine guilt based upon on the relative credibility of the witnesses, including both Victim and Movant. The limited evidence presented at trial leaves insurmountable challenges in assessing the effect that evidence of Movant's prior arrest on charges of "child assault" had on the jury's consideration of Movant's credibility, a central tenet of this case. The last words jurors heard from Movant at trial was that he had been previously arrested for a child assault. It is reasonable to conclude that evidence of Movant's prior arrest for "child assault" could affect the jury's deliberation of Movant's credibility and guilt. Significant to

my analysis of prejudice is not only the testimony that Movant had a prior arrest, but that the description of that arrest was sufficiently vague and undefined so as to allow unbridled speculation in the minds of the jurors as to the prior bad acts of Movant. The prejudice flowing from Trial Counsel's questioning might have been mitigated had Movant's prior arrest been described as something other than child assault, or had Trial Counsel undertaken any effort to rehabilitate Movant by eliciting testimony that the prior arrest did not involve allegations of sexual abuse, was for a misdemeanor, and did not lead to any prosecution. Had Trial Counsel rehabilitated Movant's testimony with any of the facts presented at the Movant's motion hearing, evidence of Movant's prior arrest would not have presented the same potential impact on the jury's determination of Movant's credibility, and consequently his guilt.

Given the predominant role of the issues of witness credibility at trial, the lack of non-testimonial evidence available at trial, and the highly prejudicial nature of the prior arrest, as characterized, to the jury, I disagree with the conclusion reached by motion court and the majority opinion of this Court that there was no reasonable probability the result at trial would have been different if this matter was not disclosed at trial. To the contrary, upon review of the entire record, I conclude there is a "reasonable probability" that, but for Trial Counsel's errors, the result of the proceeding would have been different. *See Anderson*, 196 S.W.3d at 33.

The State relies on the case of *State v. Johnson*, 841 S.W.2d 298 (Mo.App. S.D. 1992), in maintaining that Movant suffered no prejudice from Trial Counsel's actions. While the State correctly argues that many of the defendant's trial counsel's actions in *Johnson* are similar to those in

this case, the facts relevant to the convictions of the respective defendants, including the strength of the evidence before the respective juries, are clearly distinguishable. In *Johnson,* the defendant was charged with attempted forcible rape after an incident where he attacked, beat, and attempted to rape a female in his home. *Id.* at 299. While the defendant was testifying at his trial, his trial counsel asked him, "Have you been in trouble before with the law on anything—ever?" *Id.* at 301. The defendant responded that he pleaded guilty to a second-degree burglary charge when he was seventeen-years-old and had been placed on probation. *Id.* On cross-examination, the prosecutor then asked the defendant, "Have you had any other trouble with the law?" *Id.* In overruling defense counsel's objection, the trial court noted, "You [defense counsel] asked if he had trouble with the law, not if he had convictions." *Id.* The defendant then responded that he had been arrested in 1977 and 1985. *Id.* The defendant claimed in his motion for post-conviction relief that he was denied his constitutional rights to effective assistance of counsel because the prosecutor was permitted to elicit testimony about his prior unrelated arrests, which would have otherwise been inadmissible in the absence of his trial counsel's "trouble with the law" question. *Id.* The motion court found the defendant was not prejudiced by his trial counsel's questioning. *Id.* The Southern District affirmed the motion court's finding, noting that:

> The cross-examination of [the defendant] was brief, the questions were at the beginning of the state's cross-examination of [the defendant], and the questions were limited in scope. The evidence of [the defendant's] other arrests was not emphasized by the state, and it was not alluded to again in any witness's

testimony or in the state's closing argument.

*Id.* at 301–02.

I acknowledge the similarities between *Johnson* and the case before us, in particular the State's restraint in not emphasizing the arrest in its closing argument. I note that, as in *Johnson,* the cross-examination of Movant regarding the arrest was brief, the evidence was not emphasized by the State, the arrest was not alluded to in any other witness's testimony, and the arrest was not mentioned in the State's closing argument. However, the significant factual differences between *Johnson* and this case warrant different outcomes.

First, in *Johnson,* the arrests elicited by the State as a result of the defendant's trial counsel's "opening the door" were unrelated to the crimes prosecuted at trial, were not similar to the crime for which the defendant was being tried, and occurred several years prior to the crime prosecuted at trial. Here, not only was the arrest close in time to the crime being prosecuted (the child assault arrest was in the summer of 2003, approximately one year after the prosecuted crimes), but the arrest was characterized at trial as being of the same nature of the crimes for which Movant was on trial. Movant testified he was arrested for child assault during his trial for statutory sodomy and child molestation. Trial Counsel made no attempt to rehabilitate Movant by introducing testimony that the arrest did not involve any claims of sexual assault or abuse. The close relation of the crimes prosecuted and the arrest admitted as a direct result of Trial Counsel's opening the door to the introduction of such evidence substantially increase the likelihood that the jury would consider the Movant's arrest for child assault when deliberating Movant's credibility and guilt.

Second, the evidence of guilt presented at the defendant's trial in *Johnson* was

much stronger than the evidence presented in this case. In *Johnson*, the "[e]vidence to support the conviction was strong." The evidence included testimony that after the incident with the defendant, the victim ran to a neighbor's house who provided first aid and called law enforcement. Blood was found on the victim's clothing. The neighbors testified that the victim was covered in blood and told them she had been beaten and raped. Medical evidence of victim's treatment at a hospital was presented. *Id.* at 299, 302. Moreover, the defendant testified at his trial and admitted beating the victim, noting that he "had expected to have consensual sexual relations." *Id.* at 299. In contrast, here, not only did Movant deny Victim's allegations, but the only evidence of Movant's guilt presented by the State was Victim's statement, which Brother called into question, and Officer Jauer's testimony regarding Victim's reporting of the incident a year and a half after it allegedly occurred.

The evidence presented at trial was highly dependent upon the juror's assessment of credibility of the Victim and Movant. Without more substantial evidence, it is much more likely here, than in *Johnson*, that "opening of the door" to Movant's prior arrest for "child assault" would influence the jury.

Finally, and perhaps most importantly, in *Johnson*, the determination of guilt did not rest solely on the credibility of the witnesses. Substantial additional evidence was presented in *Johnson* on which the jury could rely to convict the defendant of the crimes charged. In this case, however, the determination of guilt rested solely on the credibility of the witnesses—primarily Victim and Movant. From the beginning of the trial, starting with voir dire, the State framed its prosecution of Movant as a case dependent on the credibility of the

witnesses. The State subsequently closed the trial with the same argument, noting that the case rests on the credibility of the witnesses. Given the nature of this case, and the emphasis placed throughout the trial on credibility, it is difficult for me to conclude that the evidence elicited regarding Movant's prior arrest for "child assault" did not negatively impact the jury's assessment of Movant's credibility. Given the significant differences from the factual scenario presented in *Johnson*. I do not find *Johnson* instructive.

This Court must consider the overall circumstances when determining whether Trial Counsel's performance, which opened the door to the admission of evidence of Movant's prior arrest. has undermined our confidence that justice was done in the proceeding. *Gardner v. State*, 96 S.W.3d 120, 131 (Mo.App. W.D.2003). "We are able to grant relief only if the entire record reveals that defendant was prejudiced." *Id.* (internal quotations omitted). Here, the evidence was less than certain as to what. if anything, actually happened that night during the summer of 2002 between Movant and Victim. Although there was evidence from which a jury could have concluded Movant molested Victim, such evidence was far from overwhelming and was highly dependent upon the jury's assessment of credibility. I believe that the decision to ask Movant about prior "trouble," thus opening the door for the State to bring into evidence his prior arrest for "child assault," and the subsequent failure to rehabilitate Movant regarding the nature of the arrest was potentially pivotal in the jury's deliberation and consideration of Movant's credibility and guilt. I do not allege Trial Counsel's performance was deficient in all respects or that Trial Counsel lacked skill in the defense of this matter. Trial Counsel is clearly an experienced defense attorney and showed an ability to present a viable defense for Movant in this case. However, it is equally clear that

Trial Counsel opened the door to allowing Movant's prior arrest for "child assault" as evidence before the jury and then failed to attempt to rehabilitate Movant before the jury on that evidence. Because of the unique circumstances of this case, I believe that, but for the mistake by Trial Counsel, there is a reasonable probability that the result of the trial would have been different. Given the totality of the facts of this case, I cannot be confident in the trial having achieved a just result.

For these reasons, I am left with the definite and firm impression that a mistake has been made and that the motion court's finding that Movant was not prejudiced by Trial Counsel's conduct was clearly erroneous. I would reverse the motion court's judgment denying post-conviction relief, and remand this case to the trial court with directions to vacate the convictions and to afford Movant a new trial.